Samuel Sando WAYNE II, Appellant,

v.

MASTERSHIELD, INC., Respondent,

Parkview Associates, Respondent.

No. C5–99–248.

Court of Appeals of Minnesota.

Aug. 3, 1999.

Donald R. McNeil, Bennett, Brown & McNeil, P.A., Minneapolis, for appellant.

John H. Ramstead, Howard Lee Bolter, Borkon, Ramstead, Mariani & Letourneau, LTD., Minneapolis, for respondent Master-Shield Inc.

Michael Lindberg, Johnson & Lindberg, P.A., Minneapolis, for respondent Parkview Associates.

Craig D. Diviney, Andre T.M. Hanson, Sarah M. Thier, Grant A. Johnson, Dorsey & Whitney LLP, Minneapolis, for amici curiae.

James E. Wilkerson, Kevin Reuther, Housing Discrimination Law Project, Legal Aid Society of Minneapolis, Minneapolis, for Urban League and Residents for Affordable Housing.

Considered and decided by TOUSSAINT, Chief Judge, KALITOWSKI, Judge, and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge

Samuel Sando Wayne II brought an action against MasterShield, Inc. and Parkview Associates alleging, among other things, discrimination in violation of the real property and public accommodation provisions of the Minnesota Human Rights Act (MHRA) Minn.Stat. § 363.03, subds. 2, 3 (1998). On appeal from summary judgment dismissing his discrimination claim, Wayne challenges the district court's conclusion that: (1) the MHRA does not pro-

tect tenants' guests; and (2) Parkview Associates' residential apartment complex is not a public accommodation within the meaning of subdivision 3. We affirm.

## FACTS

Parkview Associates owns and operates Parkview Apartments (Parkview), a residential apartment complex. Parkview's lease allows visitors on the premises "only in the company of a tenant." Parkview hired MasterShield, a private security company, to provide security and ensure compliance with the visitor rules. Erik Bergling and Greg Smith were MasterShield employees.

On Nov. 9, 1997, Samuel Sando Wayne II, a recent immigrant from Liberia, went to Parkview with his family to visit his mother-in-law. After being buzzed in, Wayne left the building unescorted to fetch a gift. In the parking lot, Smith stopped Wayne and accused him of violating Parkview's escort policy by entering the building without a tenant escort. Smith then took Wayne to the security office, where Bergling demanded identification. Bergling told Wayne to put his hands above his head and Wayne complied. He then shoved Wayne into a "holding cell" and struck Wayne's head against the wall, causing Wayne to suffer a deep cut above his left eye and to bleed profusely. During this altercation, Bergling told Wayne, "Welcome to America." Bergling admitted that he knew Wayne was an immigrant.

After he was released, Wayne returned to his mother-in-law's apartment. Smith and Bergling followed Wayne and demanded that Wayne leave the premises.

Wayne sued MasterShield and Parkview Associates, alleging various tort claims as well as violations of the MHRA. MasterShield and Parkview Associates moved for summary judgment, dismissing Wayne's discrimination claim under the MHRA. The district court granted MasterShield's and Parkview's motions, holding that: (1) the real property provision of the MHRA

does not protect tenants' guests; and (2) Parkview Apartments is not a public accommodation within the meaning of Minn. Stat. § 363.03, subd. 3.

## ISSUES

1. Does the real property provision of Minn.Stat. § 363.03, subd. 2(1) apply to guests at an apartment complex?

2. Is an apartment complex a public accommodation within the meaning of Minn.Stat. § 363.03, subd. 3(a)(1)?

## ANALYSIS

When reviewing a summary judgment, the appellate court must determine whether there are any genuine issues of material fact and whether the district court erred as a matter of law. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997); *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Because Wayne does not object to the district court's recitation of the facts, this case raises only questions of law.

### I.

Wayne argues that the district court erred in concluding that Minn.Stat. § 363.03, subd. 2(1) does not extend its protections to guests of tenants. The real property section of the Minnesota Human Rights Act provides:

It is an unfair discriminatory practice:

(1) For an owner, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease any real property, or any agent of any of these:

(a) to refuse to sell, rent, or lease or otherwise deny to or withhold from any person * * * any real property because of race, color, * * * national origin * * *; or

(b) to discriminate against any person * * * because of race, color * * * national origin * * * in the terms, conditions or privileges of the sale, rental or lease of any real proper-

ty or in the furnishing of facilities or services in connection therewith
* * * *

Minn.Stat. § 363.03, subd. 2. The MHRA reflects its "strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services." *Roberts v. United States Jaycees*, 468 U.S. 609. 624, 104 S.Ct. 3244, 3253, 82 L.Ed.2d 462 (1984). The MHRA "shall be construed liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363.11 (1998). Although the Minnesota legislature has cautioned courts "against narrowly construing any of the provisions of Minn.Stat. 363.03," *U.S. Jaycees v. McClure*, 305 N.W.2d 764, 766 (Minn.1981), we also must be cautious not to impermissibly expand the application of the statute.

Relying on established principles of statutory construction, we conclude that the real property provision of the MHRA can reasonably be construed to forbid discrimination *only* in connection with the sale, rental, or lease of real property. First, under the doctrine of *ejusdem generis*, the general wording of a statute must be interpreted to include only matters of the same kind or class as those specifically enumerated. *State v. End*, 232 Minn. 266, 45 N.W.2d 378, 381 (1950); *C.f.* Minn.Stat. § 645.19 (1998) ("[p]rovisos shall be construed to limit rather than to extend the operation of the clauses to which they refer"). Accordingly, the broad phrase "or otherwise deny to or withhold from" must be interpreted to encompass only such transactions that involve the sale, rental, or lease of real property.

In the alternative, respondents argue that the doctrine of *noscitur a sociis* applies. Under this doctrine, a phrase capable of several meanings is defined by the words with which the phrase is associated. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Minn.Stat. § 363.03, subd. 2(1) specifically proscribes discrimination against "any person," rather than against lessees, tenants, or buyers. The associated language, however, makes clear that discrimination is proscribed only in the sale, rental, or lease of property or the furnishing of facilities or services related thereto. Under the *noscitur a sociis* doctrine, therefore, and indeed upon a plain reading of the text, "any person" is anyone involved in or trying to become involved in a real estate transaction. Similarly, the phrase "furnishing of facilities or services *in connection therewith*," Minn.Stat. § 363.03, subd. 2(1)(b) (emphasis added), clearly refers to those services or facilities related to a real estate transaction.

We thus conclude that the protections afforded by Minn.Stat. § 363.03, subd. 2, are limited to parties or potential parties to a real estate transaction. Because it is undisputed that Wayne was not a party to a real estate transaction, we hold that the district court did not err in granting summary judgment in favor of Parkview and MasterShield dismissing Wayne's claim under Minn.Stat. § 363.03, subd. 2.

## II.

Wayne also claims that MasterShield and Parkview violated the public accommodations provision of the Minnesota Human Rights Act. The public accommodations provision states that:

It is an unfair discriminatory practice:

(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color * * * [or] national origin.

Minn.Stat. § 363.03, subd. 3(a)(1). The Minnesota legislature defined "public accommodation" as:

a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind * * * whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.

Minn.Stat. § 363.01(33) (1998). This language gives rise to the presumption that courts "are not to substitute the literal, ordinary meaning of 'place of public accommodation' for the definition the legislature has provided." *McClure*, 305 N.W.2d at 766.

Whether an entity is public or private hinges on two criteria: (1) the selectiveness of the group in the admission of members; and (2) the existence of limits on the size of the membership. *McClure*, 305 N.W.2d at 770. Wayne does not allege that Parkview discriminated against prospective or existing tenants. Instead, he alleges discrimination against a tenant's guest. In contrast to the Jaycees at issue in *McClure*, Parkview is very selective with respect to membership: Parkview is not open or accessible to the general public. Tenants are screened and a tenant must accompany all guests at all times. Parkview's rule effectively limits the pool of prospective members of the group, as well as the group's ultimate size. The issue of what constitutes a "public business facility" depends on

> whether the organization invites only a screened, selected portion of the public, or whether, instead, it has a standing, open invitation to an unscreened, unselected, and unlimited number of persons from the general public.

*McClure*, 305 N.W.2d at 773. As explained above, Parkview does not permit unfettered public access and only invites acquaintances of tenants who are contemporaneously on the premises.

Parkview is similar to the Mall Transit Station in *Gold Star Taxi & Transportation Serv. v. Mall of America Co.*, 987 F.Supp. 741, 752 (D.Minn.1997) (applying the two-step inquiry to conclude that the Mall Transit Station was not a public accommodation within the meaning of the Minnesota Human Rights Act). Gold Star Taxi required various qualifications from prospective taxi drivers at its mall transit station. *Id.* at 753. Like Gold Star, Parkview required qualifications

from prospective tenants and guests. In addition to its screening qualifications, Parkview's "tenantship" size is limited by the number of apartment units. Furthermore, visitors must be "sponsored" by tenants, hence their numbers are also limited. We conclude, therefore, that for purposes of this case, Parkview is not a public business facility within the meaning of the Minnesota Human Rights Act.

In interpreting cases under the Minnesota Human Rights Act, we give strong weight to federal court interpretations of Title VII claims because of substantial similarities between the two statutes. *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir.1997); *Continental Can Co. v. State*, 297 N.W.2d 241, 246 (Minn.1980). According to Title VII of the Civil Rights Act,

> [a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination * * * on the ground of race, color * * * or national origin.

42 U.S.C. § 2000a(a) (1994). Title VII limits the definition of public accommodations to an "establishment which provides lodging to transient guests." 42 U.S.C. § 2000a(b)(1). Similar to Title VII, the Americans With Disabilities Act (ADA) proscribes discrimination on the basis of disability in the "equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a) (1994). The ADA defines public accommodation as "an inn, hotel, motel, or other place of lodging." 42 U.S.C. § 12181(7) (1994). Legislative history of the ADA indicates that " 'other places of lodging' does not include residential facilities." *Independent Hous. Svcs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F.Supp. 1328, 1344 n. 14 (N.D.Cal.1993). Analogous federal law and interpretations

thereof, clearly exclude apartment complexes and condominiums from their respective public accommodations provisions. An apartment complex is a series of private non-transient dwellings and is not therefore a public accommodation within the meaning of the Minnesota Human Rights Act. Because we conclude that Parkview is not a place of public accommodation, we hold that the district court did not err in granting summary judgment on this issue as to both MasterShield and Parkview.

## DECISION

The district court did not err in concluding that the Minnesota Human Rights Act requires a real property transaction to trigger the protections afforded by the real property provision. Nor did it err in concluding that apartment complexes are not public accommodations within the meaning of Minn.Stat. § 363.03, subd. 3. Accordingly, the district court properly granted summary judgment dismissing Wayne's claims under Minn.Stat. § 363.03, subds. 2, 3.

**Affirmed.**