### In re the CUSTODY OF A.L.R.

**Jose Ramirez, Sr., et al., petitioners, Respondents,**

v.

**Jessica Luna, Appellant.**

No. A12–1602.

Court of Appeals of Minnesota.

April 8, 2013.

Kevin D. Conneely, Matthew D. Melewski, Jenna Schwartzhoff Bettes, Leonard, Street and Deinard, P.A., Minneapolis, MN, for appellant.

Cynthia A. Moyer, Nicole M. Moen, Fredrikson & Byron, P.A., Minneapolis, MN, for amicus curiae The Advocates for Human Rights.

Katherine L. Evans, Benjamin R. Casper, Casper & Evans, P.A., Minneapolis, MN, for amicus curiae Immigrant Law Center of Minnesota.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

In this third-party custody dispute, appellant-mother argues that the district court: (1) erred by determining that respondent-grandparents established by clear and convincing evidence that they are interested third parties under Minn. Stat. § 257C.03, subd. 7(a), because extraordinary circumstances exist; (2) abused its discretion by determining that granting grandparents' third-party custody petition is in the child's best interests; and (3) erred by failing to consider the factors set forth in Minn.Stat. § 257C.03, subd. 7(b), in determining whether grandparents are interested third parties. Because we conclude that the district court erred by determining that grandparents established by clear and convincing evidence that they are interested third parties, we reverse and remand.

## FACTS

Appellant Jessica Luna (mother) and Jose Ramirez, Jr. (father), are the parents of A.L.R. (the child), who was born in April 2009. Mother was 17 years old when the child was born and father was 15 years old; they have never been married. Mother began living with father and his parents, respondents Jose Ramirez, Sr. (grandfather), and Maria DeJesus Ramirez (grandmother), while she was pregnant

with the child. Mother continued to live with grandmother and grandfather (collectively, grandparents) with the child, father, and grandparents' other children until September 2011. During that time, the family lived primarily in Minnesota, except for a brief period of time at the end of mother's pregnancy when they lived in Texas; the child was born in Texas and the family returned to Minnesota shortly afterward. Mother is an undocumented immigrant, father and grandmother are United States citizens, and grandfather is a legal resident.

In September 2011, an altercation occurred between mother and grandmother. As a result of that incident, mother left grandparents' home with the child, went to stay with her maternal grandmother, and petitioned for an ex parte order for protection (OFP) against grandmother. Grandmother also petitioned for an ex parte OFP against mother, and the district court granted both ex parte petitions. At the same time, grandparents executed, but did not file, a petition for sole legal and sole physical custody of the child.

In October, the district court held an OFP hearing regarding mother's ex parte OFP against grandmother. Following the hearing, the district court dismissed the OFP. On the same day, grandparents filed the previously executed petition for custody of the child. Four days later, grandparents filed an emergency ex parte motion for immediate temporary legal and physical custody of the child. The district court found that there was a clear and present danger that mother may leave the court's jurisdiction with the child and granted grandparents temporary sole legal and sole physical custody of the child. The child was removed from mother's care and placed in grandparents' care. After a hearing, the district court issued a temporary order incorporating the terms of the ex parte order.

Following a trial on the custody petition, the district court determined that grandparents had established by clear and convincing evidence that they are interested third parties in the custody determination of the child under Minn.Stat. § 257C.03. The district court further found that it is in the child's best interests that grandparents receive sole physical and sole legal custody of the child and, as a result, the district court granted sole physical and sole legal custody of the child to grandparents. Finally, the district court adjudicated father to be the father of the child. Mother moved for amended findings or a new trial; the district court denied the motion. This appeal follows.

## ISSUE

Did the district court err by determining that grandparents established by clear and convincing evidence that they are interested third parties under Minn.Stat. § 257C.03, subd. 7(a), because extraordinary circumstances exist?

## ANALYSIS

This court's review of a district court's third-party custody determination is limited to whether the court abused its discretion. *Lewis–Miller v. Ross,* 710 N.W.2d 565, 568 (Minn.2006). A district court abuses "its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn. 1985). This court will not set aside a district court's findings of fact unless they are clearly erroneous. *Vangsness v. Vangsness,* 607 N.W.2d 468, 472 (Minn. App.2000). But "the interpretation and construction of statutes are questions of law that this court reviews de novo." *Lewis–Miller,* 710 N.W.2d at 568.

Mother argues that the district court erred by determining that grandparents had established that they are interested third parties. An individual other than a child's parent may petition the district court for custody of the child as a de facto custodian or an interested third party. Minn.Stat. § 257C.03, subd. 1. An individual has the burden to establish that he or she is an interested third party by showing by clear and convincing evidence that:

> (i) the parent has abandoned, neglected, or otherwise exhibited disregard for the child's well-being to the extent that the child will be harmed by living with the parent;

> (ii) placement of the child with the individual takes priority over preserving the day-to-day parent-child relationship because of the presence of physical or emotional danger to the child, or both; or

> (iii) other extraordinary circumstances[.]

*Id.,* subd. 7(a)(1). An individual who petitions the district court for custody of a child as an interested third party must also "prove by a preponderance of the evidence" that it is in the child's best interests for the individual to receive custody of the child. *Id.,* subd. 7(a)(2). Finally, the statute sets forth eight factors that the district court must consider in addressing an interested third party's petition for custody of a child. *Id.,* subd. 7(b).

The district court found that grandparents established by clear and convincing evidence that extraordinary circumstances exist under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii). Specifically, the district court found that: (1) "At the time the child was born, both [mother] and [father] were minors, and both are still enrolled in high school"; (2) father "is still a minor and continues to reside with [g]randparents"; (3) the child "has lived with [g]randparents

since her birth"; (4) "[g]randparents, particularly [g]randmother, were [the child's] primary caregivers"; (5) mother "is not legally in the U.S. and her mother lives out of state"; and (6) "[o]ther extraordinary circumstances as set forth throughout this [o]rder."

## A. Chapter 257C incorporates the presumption in favor of parental custody.

As an initial matter, mother contends that the district court failed to consider whether "extraordinary circumstances" overcame the presumption in favor of parental custody. In custody disputes between parents and nonparents, Minnesota courts have traditionally applied a presumption that the child's natural parent is entitled to custody of the child. *See In re Custody of N.A.K.,* 649 N.W.2d 166, 174 (Minn.2002); *see also Durkin v. Hinich,* 442 N.W.2d 148, 153 (Minn.1989); *Wallin v. Wallin,* 290 Minn. 261, 266, 187 N.W.2d 627, 630 (1971). Under the common law parental presumption,

> [t]he natural parent is entitled, as a matter of law, to custody of a minor child unless "there has been established on the [parent's] part neglect, abandonment, incapacity, moral delinquency, instability of character or inability to furnish the child with needed care, . . . or unless it has been established that such custody otherwise would not be in the best welfare and interest of the child."

*Durkin,* 442 N.W.2d at 153 (second alteration in original) (quoting *Wallin,* 290 Minn. at 266, 187 N.W.2d at 630). But even if the presumption favors a natural parent, "it may be overturned if there are 'grave and weighty' reasons to separate a child from his or her natural parents." *Id.* This presumption is rooted in the fundamental right of parents to make decisions about

the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); *see N.A.K.*, 649 N.W.2d at 178 (Gilbert, J. and Page, J. concurring in part and dissenting in part) (stating that "[a] natural father has a fundamental liberty interest in the care, custody, and management of his child"); *Durkin*, 442 N.W.2d at 152 (stating that "[t]his court has repeatedly held that the right of a parent to custody of their child is paramount" (quotation omitted)).

In 2002, the legislature enacted chapter 257C. 2002 Minn. Laws ch. 304 §§ 1–6, at 428–36. The Minnesota Supreme Court has not determined whether chapter 257C incorporates the parental presumption articulated in caselaw. Similarly, this court has never addressed the issue in a published case. Mother argues that the parental presumption was codified in chapter 257C, and that the district court failed to consider the presumption. In response, grandparents agree that the parental presumption applies in custody proceedings under chapter 257C, but they argue that the district court properly considered the presumption in making its custody determination.

We conclude that the parental presumption articulated in the common law is incorporated into chapter 257C for two reasons. First, *N.A.K.*, a third-party custody case that the Minnesota Supreme Court decided under pre-chapter 257C law, discusses the common law parental presumption at length. *See* 649 N.W.2d at 174–77. However, four years later, the supreme court decided *Lewis–Miller*, which addressed whether to hold an evidentiary hearing in a third-party custody dispute under chapter 257C, and made only a very limited reference to *N.A.K.* 710 N.W.2d at 568. Although *Lewis–Miller* addressed different circumstances, the common law

parental presumption that was discussed extensively in *N.A.K.* was conspicuously absent from the supreme court's post-chapter 257C *Lewis–Miller* decision.

Second, and more importantly, there is a striking similarity between what the common law parental presumption required a third party to show in order to obtain custody of a child and what chapter 257C requires an interested third party to show to gain custody of a child. Under the common law parental presumption, it was presumed that custody of a child would go to the parent unless the parent was unfit, abandoned the child, "or unless there are some extraordinary circumstances which would require that [the parent] be deprived of custody." *N.A.K.*, 649 N.W.2d at 174 (emphasis and quotation omitted). Thus, a third party could overcome the presumption favoring parental custody if the parent was unfit, had abandoned the child, or if "extraordinary circumstances" existed that required that the child not be placed in the parent's custody. Similarly, under chapter 257C, a third party can obtain custody of a child by following specific steps which require the petitioner to demonstrate by clear and convincing evidence that the parent has abandoned, neglected, or somehow harmed the child, or that placement with the third party takes priority over preserving the child's day-to-day relationship with a parent due to physical or emotional danger to the child, or if other extraordinary circumstances exist. Minn.Stat. § 257C.03, subd. 7(a)(1).

Here, the district court analyzed whether grandparents established that they are interested third parties under Minn.Stat. § 257C.03, subd. 7. While the district court discussed the common law parental presumption in its order denying mother's motion for amended findings or a new trial, it did not specifically address the presumption in its order granting custody

of the child to grandparents. However, because the district court applied Minn. Stat. § 257C.03, subd. 7, and the statute incorporates the parental presumption, the district court did not err by not separately addressing the parental presumption in its custody order.

### B. "Extraordinary circumstances" under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), are circumstances of a grave and weighty nature.

■ Mother argues that the plain language and context of the statute establish that "other extraordinary circumstances" under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), are limited to circumstances related to child endangerment. "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2012). If a statute, construed according to ordinary rules of grammar, is unambiguous, a court may engage in no further statutory construction and must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996).

To establish that an individual is an interested third party under Minn.Stat. § 257C.03, subd. 7(a)(1), he or she must demonstrate that at least one of three factors applies. The plain language of the first two factors addresses situations when a child is, or has been, in danger of being abused or neglected by the child's parent. Minn.Stat. § 257C.03, subd. 7(a)(1)(i)–(ii). The first factor addresses situations where a child has been abandoned or neglected by a parent, or if the parent has exhibited disregard for the child's well-being to the extent of potentially causing harm to the child. *Id.*, subd. 7(a)(1)(i). Under the second factor, the individual must demon-

strate that the child is in emotional or physical danger. *Id.*, subd. 7(a)(1)(ii).

The third factor simply states "other extraordinary circumstances." Minn.Stat. § 257C.03, subd. 7(a)(1)(iii). Chapter 257C does not define the term "extraordinary circumstances." Minn.Stat. §§ 257C.01–.08. The Minnesota Supreme Court has not defined "extraordinary circumstances" as the term is used in chapter 257C, and only one published case by this court discusses "extraordinary circumstances." *See In re Kayachith*, 683 N.W.2d 325, 327 (Minn. App.2004) (concluding that, at a minimum, "extraordinary circumstances" require a child to have a substantial relationship with a potential third-party custodian and, therefore, the potential custodians lacked standing to petition for custody of the child due to the lack of a substantial relationship between them and the child), *review denied* (Minn. Sept. 29, 2004).

Because the phrase "extraordinary circumstances" has not been defined by statute or caselaw, it is necessary to examine Minnesota caselaw that applied pre-chapter 257C law. Minnesota courts have "long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Brekke v. THM Biomed., Inc.*, 683 N.W.2d 771, 776 (Minn.2004) (quotation omitted). There is no express abrogation of the pre-chapter 257C common law addressing "extraordinary circumstances," and we discern no necessarily implied abrogation of the common law. As a result, we conclude that the reference to "other extraordinary circumstances" in Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), includes what the common law deemed to be "extraordinary circumstances."

As discussed previously, there is a longstanding presumption in Minnesota that a parent is entitled to custody of his or her

child, *Wallin,* 290 Minn. at 266, 187 N.W.2d at 630, that is rooted in parents' fundamental right to make decisions about their children. *Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060. However, the Minnesota Supreme Court has also recognized that there are circumstances "when the state may constitutionally intrude upon a fit parent's right to the care, custody, and control of the parent's child." *SooHoo v. Johnson,* 731 N.W.2d 815, 821 (Minn.2007) (discussing a third party's right to visitation with a child).

In *N.A.K.,* which was decided under pre-chapter 257C law, the Minnesota Supreme Court considered whether, following the death of a child's custodial parent, the noncustodial parent has a superior right to custody of the child over a third party. 649 N.W.2d at 174. The supreme court determined that the "surviving, noncustodial parent is entitled to custody unless the presumption that the parent be awarded custody is overcome by extraordinary circumstances of a grave and weighty nature." *Id.* at 175. The supreme court recognized that "extraordinary circumstances" can encompass the parent's fitness as a parent as well as circumstances such as the child's special needs. *Id.* at 176. The "extraordinary circumstances" language that the supreme court used in *N.A.K.* can be traced to caselaw that uses the slightly different phrase "exceptional circumstances" to describe circumstances that are sufficient to overcome the presumption. *See id.* n. 9; *In re Hohmann,* 255 Minn. 165, 168–69, 95 N.W.2d 643, 647 (1959) (stating that "the right to custody automatically inures to the surviving natural parent" upon the custodial parent's death unless the parent is unfit, abandoned the child, or "irrespective of his fitness, exceptional circumstances indicate that the best interests of the child clearly require that the surviving parent be denied custody"); *see also Wallin,* 290 Minn. at 264,

187 N.W.2d at 629 (stating that a parent is entitled to custody of her child "unless there are some extraordinary circumstances which would require that she be deprived of custody").

The common law "extraordinary circumstances" language and the abandonment and unfitness aspects of the common law parental presumption closely resemble the language in Minn.Stat. § 257C.03, subd. 7(a)(1) and (2), which requires an individual who seeks custody of a child to show by clear and convincing evidence that a child is abandoned, neglected, or in physical or emotional danger, and by a preponderance of the evidence that it is in the best interests of the child for that person to obtain custody. This similarity indicates that all three pre-chapter 257C mechanisms for rebutting the parental presumption—abandonment, unfitness, and extraordinary circumstances—are incorporated into chapter 257C's provisions regarding interested third parties. The history surrounding the "extraordinary circumstances" phrase indicates that it refers to circumstances of a grave and weighty nature, which encompasses situations when a child has been abused or neglected, as well as circumstances when the child has special needs. Thus, "other extraordinary circumstances" under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), are those of a grave and weighty nature.

■ Mother also argues that two doctrines of statutory construction apply: *noscitur a sociis* and *ejusdem generis.* Under the doctrine of *noscitur a sociis,* "a phrase capable of several meanings is defined by the words with which the phrase is associated." *Wayne v. MasterShield, Inc.,* 597 N.W.2d 917, 920 (Minn.App.1999), *review denied* (Minn. Oct. 21, 1999). Under the *ejusdem generis* doctrine, "the general wording of a statute must be inter-

preted to include only matters of the same kind or class as those specifically enumerated." *Id.* Interpreting "other extraordinary circumstances" in context with the other two factors under Minn.Stat. § 257C.03, subd. 7(a)(1), supports the conclusion that the circumstances must be of a grave and weighty nature.

In sum, the plain language of the statute, as well as the constitutional and common law history surrounding the fundamental right of a parent to custody of his or her child, establish that "extraordinary circumstances" under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), are circumstances of a grave or weighty nature.

### C. The district court erred by determining that extraordinary circumstances are present in this case.

Mother contends that the record establishes that there are no extraordinary circumstances present in this case. She argues that grandparents never alleged or demonstrated that mother abandoned or neglected the child or subjected her to any physical or emotional harm, and she contests the district court's six findings on which it based its determination that extraordinary circumstances were present.

#### 1. Evidence of abandonment, neglect, or physical or emotional harm.

■ Mother first argues that grandparents did not allege or demonstrate that mother abandoned, neglected, subjected the child to harm, or that the child has special needs. *See* Minn.Stat. § 257C.03, subd. 7(a)(1)(i)–(ii). In response, grandparents contend that, in concluding that grandparents are interested third parties, the district court relied on factors in addition to the six it specifically named in its order, including mother's propensity to violence, her neglect of the child, and her

exposure of the child to a dangerous family member.

In its order, the district court determined that grandparents had "satisfied the initial criteria of Minn.Stat. § 257C.03 to commence a third party custody proceeding." Immediately following that statement, the district court stated that grandparents "established by clear and convincing evidence that the following extraordinary circumstances exist," and proceeded to set forth six factors. The district court did not make any findings under Minn.Stat. § 257C.03, subd. 7(a)(1)(i) or (ii). And there is no support in the record for a finding under these two subsections. While both grandmother and grandfather criticized some aspects of mother's parenting of the child, both testified that mother never abused or neglected the child. During her testimony, grandmother alluded to "bad things" in mother's extended family. But grandmother's testimony regarding those "things" was vague, and there is very little other evidence in the record regarding the background of mother's family members. The district court did not make any findings regarding the background of mother's family members (other than the immigration status of her mother and brother), or any harm that the child suffered as a result of exposure to those family members. Finally, while grandparents raised a concern that mother may travel to Mexico with the child and thereby impede father and grandparents' relationship with the child, there is no credible evidence in the record to support this concern.

#### 2. Mother's and father's ages.

■ The district court found that mother and father were minors at the time the child was born, they are both still enrolled in high school, father is still a minor, and father lives with grandparents.

These findings are supported by the record and are not clearly erroneous. But they do not rise to the level of "extraordinary circumstances" of a grave and weighty nature under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii). The fact that mother and father were minors at the time the child was born is irrelevant to the consideration of mother's ability to care for the child at the time these proceedings occurred. Moreover, the district court does not explain the nexus between its findings and its conclusion that these circumstances are, for the purposes of Minn. Stat. § 257C.03, subd. 7(a)(1)(iii), extraordinary. For example, the district court did not find that mother's and father's ages and school status negatively affect mother's ability to care for her child. *See, e.g., In re Welfare of P.L.C.,* 384 N.W.2d 222, 227 (Minn.App.1986) (concluding that the district court abused its discretion in granting custody to the children's grandparents rather than their father because the district "court did not have discretion to consider factors extraneous to the parent-child relationship ... nor to rely heavily on an alcoholic condition not shown to have an effect on that relationship").

### 3. The child's residence and her primary caregiver.

The district court found that the child has lived with grandparents since she was born and that grandparents, especially grandmother, are her primary caregivers. While the record establishes that grandmother has provided significant care to the child since her birth, there is also evidence in the record establishing that mother has been a significant caregiver. It is uncontested that the child has lived with grandparents since she was born, except for a short time when she and mother lived with mother's relatives.

Mother first contends that the district court's finding that grandmother is the child's primary caregiver was clearly erroneous. However, the fact that there is support in the record for a finding that mother has been the primary caretaker of the child does not mean that the district court's finding is clearly erroneous. *See Vangsness,* 607 N.W.2d at 474 ("That the record might support findings other than those made by the [district] court does not show that the court's findings are defective."). Because there is support in the record for the district court's findings regarding the child's residence and primary caregiver, they are not clearly erroneous.

However, these findings do not rise to the level of "extraordinary circumstances" of a grave and weighty nature under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii). This is not a situation where the child has had no contact with mother while living with grandparents. In fact, the record establishes that mother lived with the child and grandparents for the first two years of the child's life and that mother has been separated from the child only as a result of these proceedings. In addition, the district court found that mother has been a significant caregiver to the child and evidence in the record establishes that even grandparents agree that mother provided care for the child while she lived with grandparents.

### 4. Mother's undocumented-immigrant status.

The district court found that mother is not in the United States legally and that her mother lives out of state. These findings are supported by the record and are not clearly erroneous. However, mother's undocumented-immigrant status does not rise to the level of "other extraordinary circumstances" under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii). Mother's undocumented-immigrant status is not

unusual. There are approximately 10.2 million undocumented adult immigrants living in the United States, and about 46% of those adults are parents of minor children. Paul Taylor et al., Pew Hispanic Center, *Unauthorized Immigrants: Length of Residency, Patterns of Parenthood* 3, 5 (2011), *available at* http://www. pewhispanic.org/files/2011/12/ Unauthorized-Characteristics.pdf. Most significantly, the district court does not explain the connection between mother's immigration status and her ability to care for the child. *See generally P.L.C.*, 384 N.W.2d at 227 (determining that the district court abused its discretion by granting custody to the children's grandparents instead of their father in part because the district court relied on factors that did not affect the father's relationship with his children). There is nothing in the record to indicate that mother's parenting ability or the child's well-being is affected by her immigration status. Finally, the district court does not explain why the fact that mother's mother resides in another state constitutes an extraordinary circumstance.

**5. Other extraordinary circumstances.**

The district court found there were "[o]ther extraordinary circumstances as set forth throughout this [o]rder." The district court did not explain to what circumstances it referred or how these other circumstances affect mother's ability to parent the child. This court painstakingly reviewed the district court's findings and cannot discern anything that would constitute extraordinary circumstances.

In conclusion, because the record lacks clear and convincing evidence supporting the district court's finding of the existence of "other extraordinary circumstances" under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii), and because the district court did not otherwise explain what it found to constitute

"other extraordinary circumstances" under the statute, the district court erred in ruling that grandparents showed themselves to be interested third parties. Accordingly, the district court abused its discretion by awarding sole legal and sole physical custody of the child to grandparents.

**DECISION**

The district court erred by finding that grandparents established by clear and convincing evidence that they are interested third parties because grandparents did not establish that extraordinary circumstances exist under Minn.Stat. § 257C.03, subd. 7(a)(1)(iii). Because of this conclusion, we do not address mother's additional arguments. To allow for an appropriate transition of the child's custody from grandparents to mother and to address visitation issues, we remand to the district court.

**Reversed and remanded.**