*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0285**

In Re the Custody of:
A. L. R., DOB 08/25/2013,
Casey Lee Robinson, et al.,
Respondents,

vs.

Ashley Marie Robinson (Deceased),
Respondent,
Roger Keith Gould,
Appellant.

**Filed January 8, 2024**
**Affirmed**
**Reyes, Judge**

Waseca County District Court
File No. 81-FA-21-794

Perry A. Berg, Patton, Hoversten & Berg, P.A., Waseca, Minnesota (for respondents Casey Lee Robinson, et al.)

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REYES**, Judge

Appellant-father argues that the district court erred by determining that respondents are interested third parties and granting them certain custodial rights by (1) incorrectly analyzing the eight statutory factors under Minn. Stat. § 257C.03, subd. 7(b) (2022); (2) determining that respondents showed by clear and convincing evidence that "extraordinary circumstances" exist under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii) (2022); and (3) erroneously analyzing the best-interests factors under Minn. Stat. § 257C.04, subd. 1 (2022). We affirm.

## FACTS

A.L.R. was born on August 25, 2013, to now-deceased mother Ashley Marie Robinson. In July 2014, the district court adjudicated appellant Roger Keith Gould A.L.R.'s father. The adjudication order granted joint legal custody to Gould and mother, sole physical custody to mother, and "reasonable parenting time" to Gould. Because Gould was convicted in 2013 of five felony counts of possessing child pornography and had ongoing chemical-dependency and mental-health issues, Gould was not involved during the first nearly two years of A.L.R.'s life.[1]

---

[1] Gould's convictions stemmed from offenses that occurred prior to June 9, 2009. The guardian ad litem's report indicates that Gould admitted to viewing pornography depicting the abuse of girls aged "5 to 17." Gould was placed on supervised probation for five years, including conditions that he complete a sex-offender treatment program, register as a predatory offender for ten years, and not have contact with persons under age 18 unless approved by both his sex-offender-treatment therapist and probation agent.

The district court granted Gould weekly supervised parenting time with A.L.R. for one to two-hour periods in 2015. In April 2018, the district court ordered that Gould's supervised parenting time would gradually increase to eleven hours per month by July 2018. The district court's April 2018 order imposed detailed limitations regarding Gould's physical contact with A.L.R. during parenting time.[2]

In August 2019, Gould moved for increased and unsupervised parenting time and a parenting time expeditor (PTE). Mother opposed Gould's motion and requested continued supervised parenting time, raising concerns about Gould's status as a registered sex offender. In October 2019, the district court ordered Gould and mother to seek out a neutral parenting-time supervisor for Gould's parenting time, to develop a graduated parenting-time schedule to increase Gould's parenting time and to eventually include unsupervised parenting time, and to retain a PTE to assist in resolving ongoing parenting-time disputes. The October 2019 order reaffirmed all other provisions of the April 2018 order, including supervised parenting time and contact limitations. The district court subsequently appointed a PTE in December 2019 and ordered that the PTE "shall not make a decision that is inconsistent with any Order of this Court or any provision of the Judgment and Decree."

---

[2] Limitations included, among others, that Gould could only pick up A.L.R. upon her request and could not place his hands on her buttocks while holding her, that Gould could only hold A.L.R. a short time and not walk around carrying her, that Gould was only allowed to hug A.L.R. by getting down to her level and only touching her arms, hands, and shoulders while hugging her, that A.L.R. was never allowed to sit on Gould's lap, and that Gould could not lie down with or sleep next to A.L.R.

3

In June 2020, the PTE issued a decision noting that she had lifted the supervised-parenting-time requirement as of February 2020. The June 2020 decision gave Gould parenting time every other weekend for eight hours each day, not including overnights, but did not mention Gould's contact limitations with A.L.R. In October 2020, the PTE granted Gould Saturday overnights with A.L.R. In November 2020, the PTE further expanded Gould's parenting time to every other full weekend, including overnights, set other rules for splitting A.L.R.'s holidays and birthdays, and established vacation days. Neither Gould nor mother formally objected to the PTE's decisions, although the record indicates that mother remained apprehensive about them.

In October 2021, mother passed away from COVID-19 complications. Two days after mother's death, Gould filed an ex parte motion seeking sole legal and sole physical custody of A.L.R. Subsequently, respondents Casey Lee Robinson and Tracey Lynn Robinson, A.L.R.'s maternal uncle and his wife, petitioned for third-party custody of A.L.R. and filed an ex parte motion for temporary sole legal and temporary sole physical custody of A.L.R. The district court appointed a guardian ad litem (GAL) and granted temporary sole physical custody of A.L.R. to the Robinsons and temporary joint legal custody to the Robinsons and Gould. Gould answered the Robinsons' petition and counter-petitioned for custody of A.L.R. The district court heard both parties' motions before

4

affirming its prior orders and instructing the parties to observe Gould's scheduled parenting time.[3]

The district court held a two-day hearing in September 2022. The hearing included testimony from multiple witnesses, including Gould, the Robinsons, mother's boyfriend, Gould's girlfriend, Gould's friends, and the GAL. In January 2023, the district court awarded, in part, sole legal custody of A.L.R. to the Robinsons, joint physical custody to the Robinsons and Gould, and unsupervised parenting time to Gould. This appeal follows.

**DECISION**

Gould argues that the district court erred by determining that the Robinsons were interested third parties and by granting them sole legal custody and joint physical custody of A.L.R. with Gould under Minn. Stat. § 257C.03 (2022) because (1) the district court incorrectly analyzed the eight statutory factors under Minn. Stat. § 257C.03, subd. 7(b); (2) respondents failed to show by clear and convincing evidence that "extraordinary circumstances" exist under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii); and (3) the district court erroneously analyzed the best-interests factors under Minn. Stat. § 257C.04, subd. 1. We address each issue in turn.

Our review of custody determinations is limited to assessing whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *In re Custody of A.L.R.*, 830 N.W.2d 163, 166 (Minn. App.

---

[3] Gould filed his ex parte motion in the original paternity action, while the Robinsons filed their ex parte motion in conjunction with their petition. The district court addressed both cases in its order.

5

2013). We view the record in the light most favorable to the district court's findings and will defer to a district court's credibility determinations. *J.W. ex rel. D.W. v. C.M.*, 627 N.W.2d 687, 693 (Minn. App. 2001), *rev. denied* (Minn. Aug. 15, 2001). The interpretation and construction of statutes are questions of law that we review de novo. *A.L.R.*, 830 N.W.2d at 166.

Minnesota Statutes section 257C.03 governs the process of petitioning for child custody by an interested third party. To be an interested third party, the party must meet three requirements. Minn. Stat. § 257C.03, subd. 7(a). First, the party must show by clear and convincing evidence that:

> (i) the parent has abandoned, neglected, or otherwise exhibited disregard for the child's well-being to the extent that the child will be harmed by living with the parent;
> (ii) placement of the child with the individual takes priority over preserving the day-to-day parent-child relationship because of the presence of physical or emotional danger to the child, or both; or
> (iii) *other extraordinary circumstances* [exist].

*Id.*, subd. 7(a)(1) (emphasis added). The Minnesota Supreme Court has referred to these three factors as the "child-endangerment factors." *Lewis-Miller v. Ross*, 710 N.W.2d 565, 568 (Minn. 2006). Second, the party must prove by a preponderance of the evidence that the child's best interests support awarding custody to the third-party. Minn. Stat. § 257C.03, subd. 7(a)(2). Third, the party must show by clear and convincing evidence that granting the petition would not violate Minn. Stat. § 518.179 (2022), a factor not in dispute here. *Id.* at subd. 7(a)(3). A party's failure to establish that the subdivision 7(a)(1) or 7(a)(2) requirements mandates dismissal of the petition. *Id.* at subd. 8(a); *Lewis-Miller*,

710 N.W.2d at 568-69. When determining an interested third party's custody petition, a district court is required to consider the eight factors outlined in Minn. Stat. § 257C.03, subd. 7(b).

Because the eight factors outlined in Minn. Stat. § 257C.03, subd. 7(b), relate directly to the petition, including a showing of extraordinary circumstances and the child's best interests, we begin our review there.

## I. The district court correctly analyzed the eight statutory factors under Minn. Stat. § 257C.03, subd. 7(b).

Gould contends that the Robinsons are not interested third parties because the district court erred by its analysis of the eight statutory factors under Minn. Stat. § 257C.03, subd. 7(b). Gould cites to *Lewis-Miller*, 710 N.W.2d at 568-69, and alleges that, absent the eight factors, "a potential interested third party has no legal basis to bring the petition." We disagree.

As relevant here, the factors the district court must consider include:

> (1) the amount of involvement the interested third party had with the child during the parent's absence or during the child's lifetime;
> (2) the amount of involvement the parent had with the child during the parent's absence;
>  . . .
> (4) the facts and circumstances of the parent's absence;
> (5) the parent's refusal to comply with conditions for retaining custody set forth in previous court orders;
> (6) whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence;
> (7) whether a sibling of the child is already in the care of the interested third party.

Minn. Stat. § 257C.03, subd. 7(b).

Gould's argument misconstrues subdivision 7(b), the *Lewis-Miller* opinion, and the district court's analysis. First, subdivision 7(b) provides only that the eight factors "must be *considered* by the [district] court" when determining an interested party's petition, not that the eight factors must be met to avoid dismissal. Minn. Stat. § 257C.03, subd. 7(b) (emphasis added). Second, *Lewis-Miller* provides only that "[d]ismissal . . . is mandated if the petitioner fails to establish an endangerment factor [under subd. 7(a)] or that placement of the child with the petitioner is in the best interests of the child," not that a petitioner lacks a legal basis to bring a petition absent the eight subdivision 7(b) factors. 710 N.W.2d at 568-69.

Third, the district court complied with Minn. Stat. § 257C.03, subd. 7(b), when it considered the eight factors in its order. For the first two factors, the district court carefully considered the amount of time the Robinsons had spent with A.L.R. prior to mother's death and Gould's long history of steadily increasing involvement and parenting time with A.L.R. For the fourth factor, the district court considered the facts and circumstances surrounding Gould's absence during the initial years of A.L.R.'s life, including his convictions of possession of child pornography, his probation, his sex-offender treatment, and his chemical-dependency issues and treatment. The district court acknowledged Gould's increased parenting time with A.L.R. over the years, but also that mother continued to have concerns for A.L.R.'s safety with Gould. For the fifth factor, the district court noted that Gould testified to having unlimited physical contact with A.L.R. and unsupervised parenting time, both of which violated the April 2018 order. For the sixth factor, the district court acknowledged that, although there is no evidence of domestic

abuse committed by Gould, the probationary terms stemming from his past convictions have limited his parenting of A.L.R. Finally, for the seventh factor, the district court considered that the Robinsons have custody of A.L.R.'s two sisters and that A.L.R. and her sisters have been in the Robinsons' care since October 2021.

Gould specifically challenges the district court's consideration of the fifth factor, arguing that he complied with the district court's orders as he understood them, and that he, mother, and the PTE misunderstood the PTE's authority. Nevertheless, the district court's findings are supported by the record. The district court orders in effect when the petition was filed provide that Gould can only have limited physical contact with A.L.R. and supervised parenting time. The October 2019 order appointing a PTE provided that the PTE was precluded from making a "decision that is inconsistent with any Order of this Court or any provision of the Judgment and Decree." Further, no decision issued by the PTE ever amended or suspended Gould's physical contact limitations with A.L.R. The record supports the district court's finding that Gould failed to comply with its orders.

Gould also cites to *In re Kayachith*, 683 N.W.2d 325, 327-28 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004), to argue that the district court erred by evaluating the eight subdivision 7(b) factors based on circumstances that arose after the Robinsons filed their petition. However, *Kayachith* only supports that chapter 257C requires a *petition* for custody to detail the existing relationship between the petitioner and child. 683 N.W.2d at 327-28 (explaining that statute was amended to require substantial relationship between interested third party and child to avoid allowing persons with "nonexistent or only nominal relationships with a child to petition for custody"). Further, most of the district court's

9

considerations of the eight subdivision 7(b) factors relate to circumstances existing at the time the Robinsons filed their petition. We conclude that, because the district court complied with subdivision 7(b) by considering the eight factors and its findings are supported by the record, it did not abuse its discretion by its analysis.

## II. The district court appropriately determined that "extraordinary circumstances" were shown under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii).

Gould argues that, because the Robinsons failed to show by clear and convincing evidence that "extraordinary circumstances" exist, the district court erred by determining that the Robinsons are interested third parties. We disagree.

Although "extraordinary circumstances" are not defined under chapter 257C, this court has looked to the common law and concluded that extraordinary circumstances are those that are "grave and weighty" in nature, which encompass "situations when a child has been abused or neglected [or] when the child has special needs." *A.L.R.*, 830 N.W.2d at 169-70. The "fitness of a parent may not be at issue at all," but what "may be of concern are extraordinary circumstances such as the special needs of the child that dictate conferring custody on individuals most able to care for the child." *In re Custody of N.A.K.*, 649 N.W.2d 166, 176 (Minn. 2002). We have also concluded that the definition of "extraordinary circumstances" includes finding a "substantial relationship between the petitioner and the child that exists when the petitioner petitions for custody." *Kayachith*, 683 N.W.2d at 327. We stated that chapter 257C requires "a petition for custody to detail the existing relationship between the petitioner and . . . child" and contemplates "both that the petitioner-child relationship may have existed for the entirety of the child's life, and

10

that the child's siblings, as well as the child . . . may [live] with the petitioner." *Id.* (emphasis omitted).

The district court found that extraordinary circumstances had been established based on mother's unexpected death, who was A.L.R.'s primary caretaker, Gould's existing award of supervised-only parenting time, and the Robinsons' custody of A.L.R.'s two sisters. The district court's factual findings and our review of the record supports that extraordinary circumstances are present here. Further, the district court's consideration of the Robinsons' relationship with A.L.R. under its analysis of the eight subdivision 7(b) factors supports that the district court found an existing substantial petitioner-child relationship when the Robinsons filed their petition.

First, it is undisputed that, at the time of mother's unexpected death, she had sole physical custody of A.L.R. and had been her primary caretaker, while Gould only shared legal custody of A.L.R. and cared for her every other weekend. Second, the district court orders in effect at mother's death only awarded Gould supervised parenting time and imposed strict limitations on Gould's physical contacts with A.L.R. Further, in addition to Gould testifying regarding his noncompliance with the district court orders, the GAL's report indicated that Gould was referred for a psychosexual assessment in 2016 because of inappropriate sexual behavior towards a 17-year-old girl. Gould testified that he could not remember that event but acknowledged that the assessment report should be accurate. Moreover, the GAL reported still being "slightly concerned regarding [Gould's] sexual

11

conduct and addiction history," despite acknowledging that all collateral sources[4] reported that Gould had completed all recommendations.

Third, the record supports the risk of emotional harm to A.L.R. should she be separated from her sisters. The GAL reported being "very concerned" that "if [A.L.R.] is removed from [the Robinsons'] home, she would lose her secure relationship with her sisters . . . [who] are the only constants in [A.L.R.'s] life." The GAL reported that A.L.R. "loves and adores her older siblings and if she loses them or is removed from living with them, the GAL is concerned that could be damaging to [A.L.R.]," and further "that continuing to move [A.L.R.] to various homes would be more damaging" and that "[A.L.R.] needs stability, consistency, and a secure foundation." The GAL's report and testimony also indicated that A.L.R.'s therapist expressed concern about separating A.L.R. from her siblings. The therapist reported that A.L.R.'s sister is her "go to" person, that A.L.R.'s sisters have been the only constant presence in her life since their mother's passing, that they share the loss together, and that "their bond is incredible." Casey Robinson testified that A.L.R. is "glued" to her sisters after she returns from parenting time with Gould, and that potentially seeing her sisters less would be "very hard for her to overcome." Tracey Robinson testified that she believes that sole physical custody of A.L.R. with Gould would "break" A.L.R. Mother's boyfriend also testified that he believed A.L.R. would be emotionally and mentally harmed if not with her sisters. The

_____

[4] The GAL gathered information regarding Gould from ASC Psychological Services, where Gould attends sessions; Core Professional Services, where Gould completed a psychosexual assessment in March 2016; and Twin Town Treatment Center, where Gould completed a comprehensive assessment summary in August 2015.

12

district court did not err by crediting the concerns and recommendations of the GAL and other hearing testimony.

Gould cites to *Wallin v. Wallin*, 187 N.W.2d 627 (1971), to support his argument that denying him custody based on the potential disruption to A.L.R. is insufficient. In *Wallin*, the supreme court concluded that, because all custody changes involving small children will likely be "disruptive" in some way, changes of custody involving small children must be more than just "disruptive" to justify preventing a parent from prevailing in a custody dispute against a third-party, and it was "reluctant to establish precedent" that might prevent a parent from obtaining custody for that reason alone. 187 N.W.2d at 631.

*Wallin* is distinguishable. Here, Gould has never been the primary caretaker for A.L.R., he has been subject to supervised parenting time and strict contact limitations with A.L.R., and the only constants in A.L.R.'s life since birth are her sisters. Further, the district court did not rely on the potential disruption to A.L.R. as the sole factor.

Gould also relies on *In re Welfare of P.L.C.*, 384 N.W.2d 222, 227 (Minn. App. 1986), to argue that the district court's findings are not enough to support denying Gould custody. A pre-chapter 257C case, *P.L.C.* addressed a custody dispute between minor children's maternal grandparents and their natural father. 384 N.W.2d at 224. Although this court acknowledged concerns with father's drinking habits and inappropriate discipline of the children by excessive force, it held that, absent a showing of specific conditions detrimental to the children, "[i]dentified risks of parental behavior" were insufficient to show "grave reasons" to justify denial of custody to a natural father. *Id.* at 223, 227. Because the father had a good relationship with his children, the district court abused its

13

discretion by considering factors not involving the parent-child relationship and not shown to be detrimental to the children. *Id.* at 223.

Gould's reliance on *P.L.C.* is misguided. Here, as noted above, the district court considered all the relevant statutory factors, including the parent-child relationship. Gould's interactions with A.L.R. violated the standing district court orders. That these orders were in place show that Gould's past convictions *directly* implicated the parent-child relationship between Gould and A.L.R. Further, *P.L.C.* does not address the separation of siblings when they have been the only constant in a child's life, even over a natural parent. *P.L.C.* does not govern our decision here.

Finally, the record supports that, when the Robinsons filed their petition, they shared a substantial petitioner-child relationship with A.L.R. In *Kayachith*, this court concluded that when the child and child's parents had lived with paternal grandparents prior to parents' death and the cousins had only limited interactions with the child before petitioning for custody, the cousins failed to allege a substantial relationship. 683 N.W.2d at 325, 328. This court contrasted a "substantial relationship" with one that is "nonexistent or only nominal." *Id.* at 328. Here, the record supports that the relationship between the Robinsons and A.L.R. was more than "nonexistent or only nominal." Prior to mother's death, A.L.R. saw the Robinsons ten to fifteen times per year at holidays, birthday parties, and other family gatherings. A.L.R. and her sisters lived with the Robinsons for a week during the three summers prior to mother's death. Casey Robinson testified that the summer weeks were "bonding time with the nieces" during which they would stay home

14

and do crafts together. The record supports that a substantial relationship existed between A.L.R. and the Robinsons at the time their custody petition was filed.

We conclude that the district court did not abuse its discretion by determining that "extraordinary circumstances" existed under Minn. Stat. § 257C.03, subd. 7(a)(1)(iii).

**III. The district court appropriately analyzed the best-interests factors under Minn. Stat. § 257C.04, subd. 1.**

Gould argues that the district court erred by its analysis of the best-interests factors because (1) it failed to consider any parental presumption in favor of Gould and (2) the record does not support the district court's analysis. We are not persuaded.

As noted above, our review of custody determinations is limited to assessing whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law, and we will only set aside a district court's findings of fact if they are clearly erroneous. *A.L.R.*, 830 N.W.2d at 166. "[F]indings are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). "When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). When applying the clear error standard of review, we view the evidence in the light most favorable to the findings, do not reweigh the evidence, do not find our own facts, and do not reconcile conflicting evidence. *Id.* at 221-22. Further, we do not need to provide "an

15

extended discussion of the evidence" to demonstrate that the findings of the district court are correct. *Id.* at 222 (quotation omitted).

When determining whether an interested third party has proved by a preponderance of the evidence that the best interests of the child support custody with the interested third party, the district court must apply the standard set forth in Minn. Stat. § 257C.04. Minn. Stat. § 257C.03, subd. 7(c). This standard requires consideration and evaluation of all relevant factors, including twelve specific factors. Minn. Stat. § 257C.04, subd. 1(a). The district court cannot use one factor to the exclusion of all others. *Id.*, subd. 1(b). "The court must make detailed findings on each of the factors and explain how the factors led to its conclusions and to the determination of the best interests of the child." *Id.*

As to Gould's first argument, Minn. Stat. § 257C.04, subd. 1(c), states that a district court cannot give preference to a party solely because the party is a parent of the child. In addition, *A.L.R.* holds that, because the common-law parental presumption is incorporated into chapter 257C, it need not be separately addressed in a custody order. 830 N.W.2d at 168-69. The district court did not err by failing to consider the parental presumption separately in its best-interests analysis.

As to Gould's second argument, the record supports the district court's analysis of the best-interests factors. The district court made detailed findings on each of the relevant best-interests factors and considered the exhibits and testimony from the hearing in analyzing each of the relevant factors. For the first factor, "the wishes of the party or parties as to custody," Minn. Stat. § 257C.04, subd. 1(a)(1), the district court noted the undisputed fact that both parties are seeking sole legal and sole physical custody of A.L.R.

16

For the second factor, "the reasonable preference of the child," Minn. Stat. § 257C.04, subd. 1(a)(2), the district court found that, because A.L.R. is nine years old and told the GAL repeatedly that she prefers to continue to live with the Robinsons and her sisters, this factor favored the Robinsons. While Gould argues that A.L.R. may have been influenced, he points to no evidence to support this contention. Moreover, other portions of the record, including the Robinsons' testimony and mother's boyfriend's testimony, support the district court's finding.

For the third factor, "the child's primary caretaker," Minn. Stat. § 257C.04, subd. 1(a)(3), the district court considered that the Robinsons have had primary care over A.L.R. and her sisters since mother's death and that, even though Gould has cared for A.L.R. during monthly overnight visits, he was never the primary caretaker prior to mother's death. Although Gould argues that the district court should have only considered the parties' caretaker status prior to mother's death, the best-interests factors do not limit the district court's consideration to circumstances at the time of the custody petition. Minn. Stat. § 257C.04, subd. 1(a). Instead, they encompass *all* relevant factors. *Id.*

For the fourth factor, "the intimacy of the relationship between each party and the child," Minn. Stat. § 257C.04, subd. 1(a)(4), the district court found in favor of the Robinsons. Both of the Robinsons testified to their open relationship with A.L.R. and that A.L.R. also relies on her sisters for support. The district court acknowledged that, even though A.L.R.'s relationship with Gould has increased in duration and is developing, the record contained "little evidence" that A.L.R. confides in Gould. Gould testified that he did not know how A.L.R. would feel about being separated from her sisters because he

17

does not talk to her about it, that he has never asked A.L.R.'s therapist about what would be best for A.L.R., and that he does not know what kind of bond A.L.R. has with her sisters.

For the fifth factor, "the interaction and interrelationship of the child with a party or parties, siblings, and any other person who may significantly affect the child's best interests," Minn. Stat. § 257C.04, subd. 1(a)(5), the district court found that A.L.R.'s relationship with the Robinsons has become close, both with the Robinsons themselves and the Robinsons' children, and weighed in favor of the Robinsons. The GAL reported that A.L.R. refers to the Robinsons' children as her siblings and the GAL observed "a strong foundation, trusted relationship, and open communication" between A.L.R. and everyone in the Robinsons' home. The district court also recognized that, although Gould and A.L.R.'s relationship began as strained and over time has improved, A.L.R. continues to want to reside with the Robinsons.

For the sixth factor, "the child's adjustment to home, school, and community," Minn. Stat. § 257C.04, subd. 1(a)(6), the district court found that A.L.R. has adjusted well, a factor favoring the Robinsons. The GAL reported that A.L.R. is comfortable in the Robinsons' home and plays and gets along well with her siblings and the Robinsons' children. Tracey Robinson testified that A.L.R. has not appeared apprehensive about school, has had successful grades, and has made friends. Casey Robinson testified that A.L.R., her sisters, and the Robinsons' children participate in a local religious program together as well as bible school in the summer.

For the seventh factor, "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity," Minn. Stat. § 257C.04, subd.

18

1(a)(7), the district court found that A.L.R. has lived with the Robinsons and her sisters since mother's death and continues to follow Gould's prepetition parenting-time schedule, providing stability and weighing in favor of the Robinsons. The district court highlighted the importance of A.L.R.'s continued relationship with her sisters, which the GAL reported and to which both the Robinsons testified.

Despite acknowledging that the GAL had no concerns with the permanency of Gould's living situation and relationship, the district court determined the eighth factor, "the permanence, as a family unit, of the existing or proposed custodial home," Minn. Stat. § 257C.04, subd. 1(a)(8), weighed in favor of the Robinsons. The Robinsons have demonstrated continuity in their relationship, marriage, and employment, and a commitment to their biological children and A.L.R. and her sisters. They testified that they do not intend on moving from their new home which they are building to provide space for all the children. Further, the facts that the Robinsons have custody of A.L.R.'s sisters and will be closer to the exchange location support consistency and stability in A.L.R.'s life as well. Although Gould argues that the district court committed impermissible factor repetition by considering A.L.R.'s relationship with her sisters here, the relationship relates to the permanence of A.L.R.'s living situation because her sisters have been the only constant in A.L.R.'s life since her mother's death.

For the ninth and tenth factors, the "mental and physical health of all individuals involved" and "the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed," Minn. Stat. § 257C.04, subd. 1(a)(9)-(10), the district court again found

in favor of the Robinsons. Both Casey and Tracey Robinson have no mental or physical-health issues that would impact their ability to provide for the needs of A.L.R. and both are willing to provide A.L.R. with love, affection, and guidance. The district court considered Gould's past convictions and methamphetamine and alcohol use but acknowledged that Gould has maintained sobriety for the past seven years. As for A.L.R.'s mental and physical health, the district court acknowledged that both parties believe A.L.R. is doing well but should continue with individual therapy. Although Gould relies on *P.L.C.* to argue that the district court erred by considering Gould's mental health and past chemical-dependency issues, the record supports that these factors have had a direct impact on Gould's ability to care for A.L.R. in the past and are relevant in evaluating the present best-interests of A.L.R.[5]

We commend Gould for the progress he has made, including his continued sobriety. We also note that, while the district court's analysis considered Gould's past issues and challenges, the district court's decision granting him joint physical custody and reasonable parenting time acknowledges his progress.

Based on a thorough review of the record, we are satisfied that the district court acted within its discretion by its analysis of the best-interests factors and its custody determination.

**Affirmed.**

---

[5] The district court found the eleventh and twelfth factors were not relevant.