**Gail LEWIS–MILLER, petitioner, Appellant,**

**v.**

**Christopher ROSS, Respondent.**

**No. A04–2224.**

Court of Appeals of Minnesota.

July 12, 2005.

Christine M. Middleton, Meghan M. Elliott, Paul A. Banker, Lindquist Venum P.L.L.P., Minneapolis, MN, for appellant.

Melissa D. Froehle, Minneapolis, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge; PETERSON, Judge; and WRIGHT, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Gail Lewis–Miller argues the district court misinterpreted Minn.Stat. § 257C.03 (2004) in dismissing her petition for custody of her nephews without an evidentiary hearing. We reverse and remand.

## FACTS

Respondent Christopher Ross and his domestic partner Debra Lewis had a son, C.R., in 1994, and another son, M.R., in January 2003. Ross and Lewis were never married. In October 2003, Lewis died four days after being diagnosed with breast cancer. From her deathbed, she dictated and signed a note stating, "I want my sister Gayle Lewis–Miller and Christopher Ross to have joint physical and legal custody of my children [C.R.] and [M.R.]."

In December 2003, Lewis–Miller filed a petition for sole legal and physical custody of the boys, arguing, "Despite the children's mother's wishes, [Ross] should not be granted custody of the children, as the children are in physical and emotional danger in his care." Lewis–Miller alleged that Ross was using drugs in the children's presence, he and the children had recently been evicted from their apartment due to Ross's drug use and were living at a homeless shelter, and Ross intended to relocate with the children out of state. Ross filed an answer and counter-petition requesting that he be granted sole legal and physical custody of the boys.

In February 2004, the district court ordered Hennepin County Family Court Services to perform an Early Neutral Evaluation, an evaluative process intended to resolve parenting-time disputes. The court granted father temporary sole legal custody of the children subject to visitation by Lewis–Miller. The court also appointed a guardian ad litem. At some point in February or March, Hennepin County Child Protection Services opened a file on Ross based upon a referral from a social worker, who reported that Ross was not meeting the children's basic needs and was using drugs. In March, after the parties were unable to resolve their differences through the Early Neutral Evaluation process, the district court ordered the Department of Court Services to perform a formal custody evaluation.

In July, the custody evaluator learned that Ross's child protection worker had closed Ross's case file after Ross refused to complete urinalysis testing and twice failed to appear for child-protection court hearings. Because the custody evaluator determined a parenting-fitness evaluation would be necessary to complete the custody evaluation and because only Child Protection Services is authorized to perform a fitness evaluation, the custody evaluator closed Ross's file and asked the court to order a fitness evaluation.

In August, Lewis–Miller filed a motion for immediate temporary sole legal and physical custody of the children pursuant to Minn.Stat. § 257C.03 (2004), which authorizes interested (non-parent) third parties to petition for custody. In the accompanying affidavit, Lewis–Miller alleged that the children were endangered in father's care for the same reasons she alleged in the December 2003 custody petition. Father filed a motion to dismiss Lewis–Miller's motion and repeated his request for sole permanent legal custody of the boys.

Also in August, the guardian ad litem submitted her report, in which she found that the children have emotional bonds with both parties. The guardian ad litem also found that father admitted he had not complied with any of the several urinalyses ordered by child protection or court services. The guardian ad litem stated she had "grave concerns about the welfare of the children in [father's] care" and reported that she "cannot support [father] as the sole physical and legal custodian of the children at this time." The guardian ad litem recommended that father's motion for permanent sole custody be denied, that he be required to submit to regular drug testing, and that he be required to ensure that the older child attend school regularly.

At a preliminary hearing on Lewis–Miller's motion in early August, father admitted to the court under oath that he was at that time using marijuana and crack cocaine. In September, court services submitted a chemical-dependency evaluation diagnosing father as chemically dependent and recommending that he abstain from illicit drug use and complete outpatient drug treatment. The evaluation also stated that father had refused to submit to urinalysis testing on each of the four occasions the evaluator asked him to do so. The custody evaluation was not completed by the time of the September hearing at which counsel for both parties argued the pending motions.

Following the hearing, the district court dismissed Lewis–Miller's motion, reasoning that Lewis–Miller lacked standing because she failed to meet the definition of an "interested third party" set forth in Minn.Stat. § 257C.01 and had failed to meet her burden to prove the allegations of endangerment by clear and convincing

evidence, as required by Minn.Stat. § 257C.03, subd. 7. The court vacated the previous award of temporary visitation rights to Lewis–Miller and ordered that the children remain in father's sole and permanent care and custody.

## ISSUE

Did the district court err in interpreting Chapter 257C as requiring Lewis–Miller to prove her interested-third-party status by clear and convincing evidence at the petition stage of the proceedings?

## ANALYSIS

■ The district court's dismissal of Lewis–Miller's custody petition was based upon its interpretation of Minn.Stat. ch. 257C (2004), which sets forth the procedure and evidentiary burdens for third-party non-parent child custody proceedings. Issues of statutory interpretation are reviewed de novo. *Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn.2001).

Minn.Stat. § 257C.03, subd. 1(a) (2004), provides that a "third-party child custody proceeding may be brought by an individual other than a parent by filing a petition seeking custody." The statute establishes the procedure and evidentiary burdens for such a proceeding. First, a "petition for custody filed under this section must state and allege" a "basis for jurisdiction" by asserting that the petitioner is an "interested third party" or other person entitled to seek custody under the statute. *Id.*, subd. 2(a)(5) (2004); *see* Minn.Stat. § 257C.01, subd. 3(a) (defining "interested third party"). The petition must also "state and allege" other information, including the "relationship of the petitioner to each child for whom custody is sought" and "the length of time each child has resided with the petitioner." *Id.*, subd. 2(a)(4), (8). "The . . . allegations [must be]

established by competent evidence." *Id.*, subd. 2(b) (2004).

The petitioner must then establish that he or she is an "interested third party." Minn.Stat. § 257C.03, subd. 7 (2004), entitled "Interested third party; burden of proof; factors," provides:

(a) To establish that an individual is an interested third party, the individual must:

(1) show by clear and convincing evidence that one of the following factors exists:

(i) the parent has abandoned, neglected, or otherwise exhibited disregard for the child's well-being to the extent that the child will be harmed by living with the parent;

(ii) placement of the child with the individual takes priority over preserving the day-to-day parent-child relationship because of the presence of physical or emotional danger to the child, or both; or

(iii) other extraordinary circumstances; and

(2) prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the interested third party.

In determining whether Lewis–Miller has met her burden to show she is an interested third party and granting her custody would be in the child's best interests, the district court must consider eight separate statutory factors, including the amount of involvement the interested third party and the parent had with the child during the parent's absence or during the child's lifetime and the facts and circumstances of the parent's absence. *Id.* subd. 7(b). "The court must dismiss a petition for custody if the court finds that . . . the petitioner does not establish at least one of the [three interested third-party] factors in

subdivision 7 [or that] placement of the child with the petitioner is not in the best interests of the child." *Id.,* subd. 8(a) (2004).

By its terms, the statute establishes the following procedure. First, an individual seeking custody must file a petition stating or alleging a jurisdictional basis—in this case, as an interested third party—and supporting that allegation with "competent evidence." Next, the petitioner must show by clear and convincing evidence that he or she is an interested third party and prove by a preponderance of the evidence that granting him or her custody would be in the child's best interests. Finally, the district court must consider eight enumerated factors to determine whether the petitioner has met the burden and dismiss the petition if he or she has not.

Here, the district court dismissed Lewis–Miller's petition after concluding that she had failed to show by clear and convincing evidence that she is an interested third party. The court did not reach the issue of whether Lewis–Miller had proved that it would be in the children's best interests to grant her custody. Lewis–Miller argues the court fundamentally misconstrued the statute by disregarding the distinction between a petitioner's evidentiary burden at the petition stage—to allege various facts supported by competent evidence—and her ultimate burden to show third-party status by clear and convincing evidence and prove by a preponderance of the evidence that granting her custody would be in the child's best interests. She contends that the statute contemplates two separate stages, each with a different evidentiary standard: a preliminary prima facie showing, which, if sufficient, is followed by an evidentiary hearing to determine the ultimate merit of the allegations in the petition. The district court, she concludes, erred by holding her

petition to the heightened standard of her ultimate burden, thereby circumventing the statutory procedure and denying her the right to a full evidentiary hearing.

The statute contains separate subdivisions addressing first the "[r]equisites of petition and motion" and its burden in subdivision 2, then the burden of proof to prove interested-third-party status, in subdivision 7. Subdivision 7 also enumerates the factors the district court must weigh in considering the petition's merits. Lewis–Miller correctly contends that the statute implicitly contemplates an evidentiary hearing upon a prima facie showing at the petition stage.

*In re Kayachith,* 683 N.W.2d 325 (Minn. App.2004), *review denied* (Minn. Sept. 29, 2004), the only Minnesota case interpreting Chapter 257C, supports the proposition that the statute establishes one standard for the allegations in the petition and another heightened standard for the ultimate burden. *Kayachith* involved a custody dispute between the paternal grandparents and maternal cousins of a child whose parents had died in a car accident. *Id.* at 325–36. This court held the cousins lacked standing to petition for custody because they did "not allege[] that they had a substantial relationship with the child when they petitioned for custody, and because they actually lack such a relationship with the child." *Id.* at 327. The court stated that the "portions of Chapter 257C applicable to cases involving 'interested third parties' require a petition for custody to detail the existing relationship between the petitioner and the child, and contemplate ... that the petitioner-child relationship may have existed for the entirety of the child's life." *Id.* The court ordered the petition dismissed for the petitioners' failure to meet the burden established in subdivision 2 of the statute: to allege in detail their existing relationship with the child.

■ Here, Lewis–Miller's petition for custody was accompanied by an affidavit including five paragraphs detailing her allegations concerning her relationship with the children. These allegations, as verified by her and supported by competent evidence, are sufficient as a matter of law to meet the evidentiary standard applicable to petitions.

Ross argues the district court properly dismissed the petition because Lewis–Miller failed to prove, as required by Minn. Stat. § 257C.03, subd. 7(b)(1), that she was an "interested third party" who had been sufficiently involved with the children during their mother's lifetime. Ross imprecisely confuses the burden of proof applicable to a viable petition with the burden a petitioner must ultimately meet to prevail on the merits. To be viable under the statute, it is sufficient that a petition alleging a person to be an "interested third party" assert certain facts which, if true, would show that the petitioner meets the definition of such a party as set forth in Minn.Stat. § 257C.03, subd. 7(a)(1). Whether those assertions are actually true is to be resolved at the subsequent hearing, where the district court must consider the factors set forth in Minn.Stat. § 257C.03, subd. 7(b). Thus, although the factors are germane to the content of the petition, the "clear and convincing evidence" burden of proof, by which the assertions must be proved, is not. Ross is therefore incorrect to argue that Lewis–Miller was required to prove the actual truth of the petition's assertions in the petition itself, rather than at a subsequent evidentiary hearing.

Ross also argues the petition was properly dismissed because Lewis–Miller failed to provide clear and convincing evidence that the children were in harm or endangered in Ross's care. Again, the statute does not require a petitioner to meet this standard at this stage of the proceeding. And as Lewis–Miller observes, the statute does not require that she make even a prima facie showing of endangerment at the time she submits her petition.

■ We further observe that typically custody-modification proceedings initiated by a parent follow the procedure that Lewis–Miller argues is required by Chapter 257C. Upon a petitioner's prima facie showing that the statutory standard for modification could be satisfied, the district court has the discretion to order an evidentiary hearing. *Geibe v. Geibe,* 571 N.W.2d 774, 777–78 (Minn.App.1997). This showing is made when the accompanying affidavits set forth sufficient facts which, if true, justify modification. *Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn.1981). The procedure advocated by Ross would appear to disregard that procedural model by requiring a petitioner to present ultimate proof when first presenting the petition.

### DECISION

Lewis–Miller filed a viable petition to commence third-party custody proceedings under Chapter 257C. She is therefore entitled to an evidentiary hearing to prove her interested-third-party status by the statutory burden.

**Reversed and remanded.**