Gail LEWIS–MILLER, Respondent,

v.

Christopher ROSS, Appellant.

No. A04–2224.

Supreme Court of Minnesota.

March 9, 2006.

Paul A. Banker, Christine M. Middleton, Meghan M. Elliott, Lindquist and Vennum, PLLP, Minneapolis, MN, for Appellant.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg PA, Melissa D. Froehle, Central Minnesota Legal Services, Minneapolis, MN, for Respondent.

---

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

Appellant Christopher Ross, the father of two minor children currently ages 11 and 3, sought dismissal of a petition by respondent Gail Lewis–Miller, the children's maternal aunt, for custody of the children under Minn.Stat. § 257C.03 (2004). The district court dismissed the petition without an evidentiary hearing. The court of appeals reversed and remanded for an evidentiary hearing. Concluding that the petition for third-party custody was valid and that the allegations, if true, would satisfy the requisite statutory criteria, we affirm.

In October 2003, the children's mother passed away suddenly. Shortly before her death, she dictated and signed a note stating that she wanted her sister, Lewis–Miller, and Ross to have joint physical and legal custody of her children.

About two months later, on December 14, 2003, Lewis–Miller filed a petition for sole legal and physical custody of the children, asserting interested-third-party status under Minn.Stat. § 257C.03 and alleging that the children were in physical and emotional danger. Specifically, Lewis–Miller alleged that she had a substantial relationship with the children and further alleged that Ross and his friends engaged in recreational drug use in the children's presence, that he and the children had been evicted from their apartment because of illicit drug activities, and that he was preparing to relocate the family outside of Minnesota, a move that Lewis–Miller thought was against the children's best interests. In response, Ross filed an answer and counter-petition denying most of Lewis–Miller's allegations and seeking permanent sole legal and physical custody of the children.

In January 2004, Hennepin County Child Protection Services (Child Protection) contacted Ross regarding concerns about his older child's excessive absenteeism from school. Child Protection also received a report from a social worker with concerns that Ross was not meeting the children's basic needs and was using drugs. Following an investigation, Child Protection ultimately made a finding of "no maltreatment" on May 19, 2004, but also determined that child-protection services were needed and assigned a child-protection worker to Ross's case file.

Meanwhile, on February 26, 2004, the district court assigned to the child custody proceeding ordered the parties and Hennepin County Family Court Services (Court Services) to engage in an Early Neutral Evaluation (ENE), an alternative dispute resolution process with an evaluative component. Pending the outcome of the ENE process, the district court granted Ross temporary sole legal and physical custody of the children, subject to visitation with Lewis–Miller. By separate order, the court appointed a guardian ad litem.

On March 26, 2004, after the ENE process faltered, the district court ordered a formal custody evaluation through Court Services. Pursuant to this order, a family-court evaluator contacted the child-protection worker assigned to Ross's case. According to the family-court evaluator's report, the child-protection worker informed her of the reports Child Protection had received regarding Ross, told her that Ross had twice failed to appear for a court hearing, had refused drug testing and had made himself generally difficult to contact. The child-protection worker also said that he was closing Ross's case file because of Ross's noncompliance and Court Services' involvement.

On July 30, 2004, Court Services submitted a report to the district court detailing what it had learned from Child Protection, but making no recommendation on custody, explaining that Child Protection should make parental-fitness determinations, not Court Services. Court Services closed its case file pending further instructions from the district court and recommended that the case be referred back to Child Protection or to juvenile court.

On August 12, 2004, Lewis–Miller filed a motion for immediate temporary sole legal and physical custody of the children, pursuant to Minn.Stat. § 257C.03, together with an affidavit again alleging illicit drug activities and academic, emotional, and physical endangerment, including a failure to provide the basic medical and nutritional needs of the children. Ross responded with a motion to dismiss and again requested permanent sole custody. In support of his motion, Ross filed an affidavit denying Lewis–Miller's allegations and other documents tending to show, among other things, that he had obtained appropriate medical care for his children.

On August 24, 2004, the guardian ad litem submitted her report to the district court, initially noting her observation that the children had a close relationship with both Ross and Lewis–Miller. The guardian reported that it appeared that Ross was trying to provide for his children, but the guardian also made note of Ross's noncompliance with drug testing requests, the older child's excessive absenteeism from school, and other indications of physical neglect. The guardian recommended that Ross's petition for permanent custody be denied pending further assessment of endangerment issues, and the guardian further recommended periodic monitoring for drug use and academic attendance, with a transfer of temporary custody to Lewis–Miller if concerns in those areas persisted.

On August 26, 2004, at a preliminary hearing on Lewis–Miller's motion, Ross admitted to the district court that he was currently using marijuana and, occasionally, crack cocaine, but he also said that he never exposed the children to drug use. Following the hearing, the court ordered Ross to undergo a chemical-dependency evaluation through Court Services. Following this evaluation, on September 10, 2004, Court Services submitted a report to the court giving its diagnostic impression of chemical dependency and recommending outpatient treatment. The evaluator also noted that Ross failed to respond to the evaluator's drug-testing requests.

The parties argued the pending motions at a hearing on September 15, 2004. After the hearing, the district court denied Lewis–Miller's motion for temporary relief and dismissed her petition for third-party custody. The court determined that Lewis–Miller lacked standing because she had failed to establish that she had a substan-

tial relationship with the children[1] and that she also had failed to establish any of the endangerment factors by clear and convincing evidence, as required by Minn. Stat. § 257C.03, subd. 7(a)(1). The court vacated all previous orders, including the award of temporary visitation rights to Lewis–Miller, and ordered that the children remain in Ross's custody.

Lewis–Miller appealed, challenging the district court's interpretation of Minn.Stat. § 257C.03 and asserting that based on the record she was entitled to an evidentiary hearing. The court of appeals agreed, concluding both that Lewis–Miller had shown a substantial relationship with the children and that the district court had misconstrued the requirements of Minn. Stat. § 257C.03. *Lewis–Miller v. Ross,* 699 N.W.2d 9, 13–14 (Minn.App.2005). The court of appeals explained that Minn.Stat. § 257C.03 contemplates a two-stage process. In the first stage, a petitioner seeking custody as an interested third party is required to state and allege certain facts and to support these allegations with competent evidence. *Lewis–Miller,* 699 N.W.2d at 13. If the petition satisfies this standard, the petitioner is entitled to an evidentiary hearing to establish interested-third-party status by clear and convincing evidence. *Id.* at 13–14. We granted Ross's petition for review.

## I.

■■■ Appellate review of custody determinations is generally limited to determining whether the district court has abused its discretion. *In re Custody of N.A.K.,* 649 N.W.2d 166, 174 (Minn.2002). However, the interpretation and construction of statutes are questions of law that this court reviews de novo. *Turner v. Mut. Serv. Cas. Ins.,* 675 N.W.2d 622, 624 (Minn.2004).

Minnesota Statutes § 257C.03 governs the procedure for petitioning for child custody as an interested third party. This procedure features two sets of requirements. First, subdivision 2 instructs that "[a] petition for custody * * * must state and allege" that the petitioner satisfies 15 listed conditions. Minn.Stat. § 257C.03, subd. 2(a). This petition must be "verified by the petitioner" and its allegations must be "established by competent evidence." Minn.Stat. § 257C.03, subd. 2(b). Second, subdivision 7 requires that "[t]o establish that an individual is an interested third party," an individual must both "prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the interested third party" and "show by clear and convincing evidence" one of the following three child-endangerment factors:

(i) the parent has abandoned, neglected, or otherwise exhibited disregard for the child's well-being to the extent that the child will be harmed by living with the parent;

(ii) placement of the child with the individual takes priority over preserving the day-to-day parent-child relationship because of the presence of physical or emotional danger to the child, or both; or

(iii) other extraordinary circumstances * * *.

Minn.Stat. § 257C.03, subd. 7(a). Dismissal of the petition is mandated if the petitioner fails to establish an endangerment factor or that placement of the child with

---

**1.** The Minnesota Court of Appeals has held that an interested-third-party petitioner must show that "a substantial relationship between the petitioner and the child * * * exists when the petitioner petitions for custody." *In re Kayachith,* 683 N.W.2d 325, 327 (Minn.App. 2004).

the petitioner is in the best interests of the child. Minn.Stat. § 257C.03, subd. 8(a).

Ross takes the position that the statute, as written, requires dismissal of an interested-third-party petition if the petitioner has failed to satisfy the evidentiary burden of Minn.Stat. § 257C.03, subd. 7(a).[2] Lewis–Miller takes the position that the statute contemplates a two-step process in which the petitioner who satisfies the requirements of Minn.Stat. § 257C.03, subd. 2 would be entitled to an evidentiary hearing and discovery, by means of which the petitioner would have the opportunity to meet the higher standards of Minn.Stat. § 257C.03, subd. 7.

■ When interpreting legislative enactments, we must presume that the legislature intended its statutes to be "effective," and not productive of "absurd * * * or unreasonable" results. Minn.Stat. § 645.17 (2004). That by its very terms Minn.Stat. § 257C.03 requires the establishment of certain elements of interested-third-party-status by clear and convincing evidence and other elements by a preponderance of the evidence, with mandatory dismissal on findings that certain elements have not been established, clearly shows that the statute contemplates evidentiary hearings for third-party custody proceedings.[3] As a practical matter, however, a reasonable construction of the statute would allow the district court discretion to dismiss a third-party custody petition without an evidentiary hearing if the petition and accompanying affidavits alleged facts which, if taken as true, would not be sufficient to satisfy the criteria of Minn.Stat. § 257C.03, subd. 7(a). Conversely, if the petition and affidavits alleged facts which, if proven, would satisfy the statutory criteria, the court would then schedule an evidentiary hearing. In this manner, it may be said that the statutory scheme contemplates a two-stage process.

As the court of appeals observed, this two-stage process is consistent with typical custody-modification proceedings in which the district court, in consideration of affidavits submitted in support of the motion for modification, reviews the documents and schedules a hearing if the movant alleges fact which, if true, would justify modification. *See, e.g., Nice–Petersen v. Nice–Petersen,* 310 N.W.2d 471, 472 (Minn. 1981) ("It is our view that a reasonable construction of the statute would be to require the trial court to deny a motion for modification of a custody order unless the accompanying affidavits set forth sufficient justification, if the facts alleged therein are true, for the modification."); *In re Weber,* 653 N.W.2d 804, 809 (Minn.App.2002) ("If the moving party's affidavit does not allege facts that, if true, would provide sufficient grounds for modification, the court need not grant an evidentiary hearing."); *Smith v. Smith,* 508 N.W.2d 222, 226 (Minn.App. 1993) ("The district court then reviews the moving party's affidavits, taking the alleged facts to be true, and determines whether a prima facie case has been made." (citing *Nice–Petersen,* 310 N.W.2d at 472)).

■ In summary, we believe the court of appeals' two-step process for third-party·child custody proceedings rep-

---

**2.** Ross does not contest the court of appeals' determination that Lewis–Miller sufficiently demonstrated a substantial relationship with the children.

**3.** *See also* Minn.Stat. § 257C.03, subd. 4 (explaining that in certain instances parties can agree to *not* have hearings); Minn.Stat.

§ 257C.02 (2004) (incorporating by reference the provisions in Chapter 518); Minn.Stat. § 518.168 (2004) (explaining that custody hearings should receive scheduling priority, shall be conducted without a jury, and at the court's request, the record may be sealed).

resents a practical system that is consistent with the statutory intent to provide evidentiary hearings when warranted by the pleadings and accompanying documents and also consistent with the statutory framework for custody modifications in general. We therefore hold that a party commencing a third-party child custody proceeding by valid petition and supporting affidavits is entitled to an evidentiary hearing when the facts alleged, if proven, would satisfy the criteria of Minn.Stat. § 257C.03, subd. 7(a).

## II.

Ross also asks us to determine the meaning of "competent evidence" for purposes of Minn.Stat. § 257C.03, subd. 2(b). The meaning of that term in the context of third-party child custody proceedings was neither litigated below nor passed on by the district court, and we decline to address the issue. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.'" (quoting *Thayer v. American Financial Advisers, Inc.,* 322 N.W.2d 599, 604 (Minn.1982))). The allegations in the petition were personally verified and, according to any of the definitions proposed by the parties, established by competent evidence. If true, the allegations would satisfy the criteria of Minn.Stat. § 257C.03, subd. 7(a). Accordingly, we remand the matter to the district court for an evidentiary hearing.

Affirmed and remanded.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this matter.