*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0677**

In re the Marriage of:

Sandee Goldsmith Becker, n/k/a Sandee Scroggs Goldsmith, petitioner,
Respondent,

vs.

Leon L. Becker,
Appellant.

**Filed December 26, 2023**
**Affirmed**
**Smith, Tracy M., Judge**

Jackson County District Court
File No. 32-FA-09-37

Travis J. Smith, Smith & Johnson, Slayton, Minnesota (for respondent)

Michelle K. Olsen, Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota
(for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Gaïtas, Judge; and

Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

In this parenting dispute, appellant father argues that the district court erred in two

ways. First, father contends that the district court erred in granting respondent mother's

motion to move their minor child to South Dakota because the district court failed to make

specific findings on the factors listed in Minnesota Statutes section 518.175, subdivision 3(b) (2022). Second, he argues that the district court erred in denying his motion to modify parenting time by reducing his parenting time below the presumptive 25% minimum as provided in Minnesota Statutes section 518.175, subdivision 1(g) (2022). Because the district court made adequate findings on the substance of the factors listed in Minnesota Statutes section 518.175, subdivision 3(b), and because the district court did not reduce father's parenting time, we affirm.

## FACTS

These facts are drawn from the district court's order and the district court record.

Father, appellant Leon L. Becker, and mother, respondent Sandee Scroggs Goldsmith, are the parents of M.A.B. and M.C.B. Father and mother divorced in 2010. When the parents' marriage was dissolved, both children were minors. The present matter involves only M.A.B. because, by the time of the relevant motions, M.C.B. was no longer a minor.

In the judgment and decree dissolving the parties' marriage, the district court awarded joint legal custody of the children to the parents and sole physical custody of the children to mother. The district court also addressed father's parenting time. It granted father parenting time of "at least two weekends per month" and overnight parenting time every Wednesday. Additionally, the district court granted father one day of midweek, evening parenting time per week "as agreed upon by the parties." The district court also granted father two weeks of parenting time in June, three weeks in July, and one week in August each year. Lastly, the district court granted father certain holiday parenting time.

But, after the COVID-19 pandemic started, M.A.B. primarily resided with mother while M.C.B. primarily resided with father. M.A.B.'s relationship with father deteriorated in December 2020. After that, M.A.B.'s preference was to limit father's parenting time. Mother suggested counseling, but father initially resisted. Later, father admitted that he and M.A.B. may need counseling to repair their relationship. As of April 2022, father had not exercised parenting time with M.A.B. for over a year.

In March 2022, mother, who had remarried, filed a motion for permission to move M.A.B.'s residence to a town in South Dakota for family reasons. The town in South Dakota is approximately 50 miles away from where mother resided with M.A.B. in Minnesota and approximately one hour away from father's home. M.A.B. was 15 years old at the time.

Father opposed mother's motion to relocate. In addition, father filed a motion seeking to modify parenting time to an equal parenting-time schedule.

In a written order, the district court granted mother's motion to relocate M.A.B.'s residence and denied father's motion to modify parenting time. With respect to relocation, the district court ordered that mother (1) may not move any farther than the specified town in South Dakota and (2) must provide transportation of M.A.B. to and from father for his parenting time. With respect to parenting time, the district court concluded that maintaining the parenting-time schedule that was already in place was in the best interests of M.A.B. The district court ordered that "[f]ather shall have parenting time every other weekend starting at 6 p.m. on Friday night through 6 p.m. on Sunday" and that "[h]e shall also have one overnight per week on Wednesdays starting at 6 p.m. through the start of school the

next morning or 9 a.m." The order did not mention father's previously granted summer and holiday parenting time.

Father appeals from the district court's order granting mother's motion to relocate and denying his motion to modify parenting time.

## DECISION

**I.      The district court did not abuse its discretion when it granted mother's motion to relocate the minor child to another state.**

A district court's decision to grant a motion to move a child's residence to a different state is reviewed for abuse of discretion. *Le v. Holter*, 838 N.W.2d 797, 802 (Minn. App. 2013), *rev. denied* (Minn. Dec. 31, 2013). "However, the interpretation and construction of statutes are questions of law that [appellate courts] review[] de novo." *Lewis-Miller v. Ross*, 710 N.W.2d 565, 568 (Minn. 2006).

The move of a child's residence out of state is governed by Minnesota Statutes section 518.175 (2022). Under that statute, a parent "shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree." Minn. Stat. § 518.175, subd. 3(a). In determining whether permission to move the child's residence to another state is appropriate, the district court must "apply a best interests standard." *Id.*, subd. 3(b). In applying that standard, the district must "consider" factors that include, but are not limited to, eight listed factors. *Id.* A district court must consider all the factors listed in the statute. *Id.*, subd. 3(c).

4

Father argues that the district court erred as a matter of law by making no specific findings of fact on the eight listed factors. In its order, the district court made findings of fact on the twelve factors used to evaluate the best interests of a child for purposes of determining issues of custody and parenting time generally, which are identified in Minnesota Statutes section 518.17, subdivision 1(a) (2022). But the district court did not cite section 518.175, subdivision 3(b), which specifically addresses relocation, nor did the district court explicitly identify that statute's eight factors in its findings. Father's challenge to the district court's order is twofold: he argues that specific findings on the eight factors were required and that the district court failed to apply the eight factors. We address each argument in turn.

A. **Minnesota Statutes section 518.175, subdivision 3(b), does not require the district court to make detailed findings regarding the eight listed factors.**

Father argues that section 518.175, subdivision 3, requires specific findings on the eight statutory factors. His argument presents a question of statutory interpretation. The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). "When a word or phrase has a plain meaning, [appellate courts] presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). Words and phrases are construed according to their plain and ordinary meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). The rules of statutory construction prohibit appellate courts from "adding words or meaning to a

statute that were intentionally or inadvertently left out." *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001).

Section 518.175, subdivision 3(b), states that "[t]he factors the court must consider in determining the child's best interests include, but are not limited to," eight listed factors. "Consider," in this subdivision, is not statutorily defined. When a term is not defined by statute, courts may look to dictionary definitions to ascertain the common and ordinary meaning of the term. *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). One dictionary's definition of "consider" is "[t]o think carefully about (something), especially before making a decision." *The American Heritage Dictionary of the English Language* 392 (5th ed. 2018). Applying the rules of statutory construction, Minnesota Statutes section 518.175, subdivision 3(b), is properly read as requiring the district court to carefully think about the factors listed—not as requiring the district court to make specific findings on the listed factors.

The Minnesota Supreme Court's decision in *Hansen v. Todnem*, 908 N.W.2d 592 (Minn. 2018), supports our interpretation of the statute. In *Hansen*, the supreme court held that the district court was not required to make detailed findings on parenting-time modification requests brought under Minnesota Statutes section 518.175, subdivision 8. 908 N.W.2d at 599. Section 518.175, subdivision 8, governs when a district court may award additional parenting time to a parent to provide care while the other parent is working. It provides that the arrangement must be in the best interests of the child. Minn. Stat. § 518.175, subd. 8. The subdivision references the best-interests factors identified in

section 518.17, subdivision 1(a), and also requires the district court to "consider" three additional factors, which it lists. *Id.*

In *Hansen*, the supreme court first noted that the reference in section 518.175, subdivision 8, to the best-interests factors in section 518.17, subdivision 1(a), did not compel the district court to make the detailed findings required under section 518.17, subdivision 1(b) (2022).[1] 908 N.W.2d at 598. Unlike section 518.17, subdivision 1(b), the supreme court explained, section 518.175, subdivision 8, does not state that the district court must make detailed findings on each of the factors. *Id.* Moreover, section 518.175, subdivision 8, in adding three factors, states only that the court must "consider" the factors. *Id.*

The supreme court further stated that "when the Legislature added a detailed-findings requirement to Minn. Stat. § 518.17, subd. 1(b)(1), it simultaneously amended two subdivisions of Minn. Stat. § 518.175" and "[i]f the Legislature had intended to require specific and detailed findings on parenting-time modification requests, it could have amended Minn. Stat. § 518.175 accordingly." *Id.* at 598-99. Thus, the supreme court held, the parenting-time modifications under section 518.175, subdivision 8, do not require the same detailed findings that an order establishing parenting time under section 518.17 requires. *Id.* at 599.

Section 518.175, subdivision 8, is analogous to section 518.175, subdivision 3—the subdivision at issue here—in that neither subdivision explicitly states that the district court

---

[1] Although the supreme court discussed the 2016 version of the statute, this opinion cites to the current 2022 version because the relevant language has not changed.

must make detailed findings. Instead, both subdivisions state only that the court must "consider" the subsequently listed factors. Furthermore, subdivision 3, like subdivision 8, was left unamended when the legislature amended Minnesota Statutes sections 518.17 and 518.175. 2015 Minn. Laws ch. 30, art. 1, §§ 3-5, at 271-75 (amending Minn. Stat. § 518.17); 2015 Minn. Laws ch. 30, art. 1, §§ 6-7, at 275-77 (amending Minn. Stat. § 518.175, subds. 1, 6). Thus, the supreme court's reasoning in *Hansen* is applicable here. If the legislature intended to require detailed findings when a district court makes modifications under subdivision 3, it would have amended the statute to require detailed findings when it was amending section 518.17 and other subdivisions of section 518.175.

We therefore conclude that the district court was not required by Minnesota Statutes section 518.175, subdivision 3, to make detailed findings on the eight listed factors.

**B.    The district court's findings demonstrate that it considered the substance of the eight factors listed in Minnesota Statutes section 518.175, subdivision 3(b).**

When specific findings are not required by statute, the district court generally need only make sufficient findings to enable appellate review. *Woodrich Constr. Co. v. State*, 177 N.W.2d 563, 565 (Minn. 1970).

Father argues that the district court's findings of fact are not sufficient to demonstrate that the district court considered the eight factors listed in Minnesota Statutes section 518.175, subdivision 3(b), because the district court explicitly referenced section 518.17 and failed to explicitly reference section 518.175, subdivision 3(b). While it would have been best practice for the district court to explicitly reference Minnesota Statutes section 518.175, subdivision 3(b), we conclude that the district court's findings regarding

the section 518.17 factors clearly demonstrate that the district court also considered the factors identified in section 518.175, subdivision 3(b).

The first factor that the district court was required to consider is "the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life." Minn. Stat. § 518.175, subd. 3(b)(1). The district court found that mother, the relocating parent, was M.A.B.'s primary caretaker and that the two share many of the same interests. The district court made findings on M.A.B.'s relationship with her brother, M.C.B., and concluded that the move would bring her geographically closer to him since he was set to attend college in South Dakota in the fall of 2022. Finally, the district court made various findings on the strained nature of M.A.B.'s relationship with father and father's unwillingness to repair the relationship.

The second factor that the district court was required to consider is "the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration special needs of the child." *Id.*, subd. 3(b)(2). The district court found that M.A.B. expressed support to relocate and that mother stated M.A.B. is a confident and assertive child. The district also found that mother believed M.A.B. would do well with a move.

The third factor that the district court was required to consider is "the feasibility of preserving the relationship between the nonrelocating person and the child through suitable parenting time arrangements, considering the logistics and financial circumstances of the parties." *Id.*, subd. 3(b)(3). The district court found that M.A.B. was close to getting her

driver's license and being able to drive herself for the one-hour trip to father's home for parenting time. Additionally, the district court ordered that mother would be responsible for transporting M.A.B. to and from father's home for parenting time until M.A.B. is able to drive herself.

The fourth factor that the district court was required to consider is "the child's preference, taking into consideration the age and maturity of the child." *Id.*, subd. 3(b)(4). The district court considered that M.A.B. was, at the time, 15 years old and that she is supportive of the move and excited.

The fifth factor that the district court was required to consider is "whether there is an established pattern of conduct of the person seeking the relocation either to promote or thwart the relationship of the child and the nonrelocating person." *Id.*, subd. 3(b)(5). The district court found that mother is supportive of the children's relationship with father based on father's strong relationship with M.C.B. and evidence of mother's communication with father, her encouragement that he participate in the children's activities, and her offering to coordinate counseling with father and M.A.B.

The sixth factor that the district court was required to consider is "whether the relocation of the child will enhance the general quality of the life for both the custodial parent seeking the relocation and the child including, but not limited to, financial or emotional benefit or educational opportunity." *Id.*, subd. 3(b)(6). The court found that mother wanted to move for family reasons.

The seventh factor that the district court was required to consider is "the reasons of each person for seeking or opposing the relocation." *Id.*, subd. 3(b)(7). Again, the district

court found that mother wanted to move for family reasons. Furthermore, the district court found that father opposed mother's motion because he believed parental alienation was the reason for his strained relationship with M.A.B. The district court found father's claim of alienation unpersuasive.

The eighth factor that the district court was required to consider is "the effect on the safety and welfare of the child, or of the parent requesting to move the child's residence, of domestic abuse." *Id.*, subd. 3(b)(8). The district court found that the domestic-abuse consideration did not apply in its best-interests analysis.

Based on a review of the district court's order, it is apparent that the district court made comprehensive findings, supported by the record, regarding the substance of the factors listed in Minnesota Statutes section 518.175, subdivision 3(b). Although the district court did not detail its findings on each of the factors explicitly, the district court considered the factors and made sufficient findings for appellate review. We therefore conclude that the district court did not abuse its discretion when it granted mother's motion to move M.A.B. to another state.

## II.	The district court did not abuse its discretion when it denied father's motion to modify parenting time.

Father also challenges the district court's denial of his motion to modify parenting time. District courts have broad discretion in deciding matters of parenting time. *Hansen*, 908 N.W.2d at 596. Appellate courts will not reverse a district court's parenting-time decision unless the district court "abuse[d] its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against

logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

Appellate courts review a district court's factual findings for clear error. *Hansen*, 908 N.W.2d at 599. Appellate courts "will not conclude that a factfinder clearly erred unless, on the entire evidence, [they] are left with a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted).

Minnesota Statutes section 518.175, subdivision 5(b), provides: "If modification would serve the best interests of the child, the court shall modify . . . an order granting or denying parenting time, if the modification would not change the child's primary residence." The moving party bears the burden to establish that the proposed modification is in the best interests of the children. *See Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn. 1978).

Under the prior parenting-time arrangement—the one established by the judgment and decree—father's parenting time amounted to 37%. Father asserts that the district court's order reduced his parenting time below the presumptive minimum of 25% established in Minnesota Statutes section 518.175, subdivision 1(g), because the order eliminated his summer and holiday parenting time. Father argues that the district court erred by failing to make specific findings addressing the statutory presumption.

Father's argument depends on his interpretation of the district court's order as reducing his parenting time below the presumptive minimum. In its order, the district court laid out its factual findings. Then, in its conclusions of law, the district court stated that "it

12

is in the best interest of the minor child to maintain the parenting-time schedule that has been in place for the past 13 years." Finally, in the order section, the district court ordered that father shall have parenting time every other weekend and one overnight per week on Wednesdays, starting and ending at specified times.

Reading the order as a whole, especially in the broader context of the record, we conclude that father's interpretation is incorrect for three reasons. First, while the order section did not mention father's summer and holiday parenting time, it did not explicitly remove father's summer or holiday parenting time. Thus, the district court did not explicitly reduce father's parenting time from 37% to below the 25% presumptive minimum.

Second, the district court did not implicitly make such a reduction. The district court's order demonstrates no intent to drastically change the prior parenting-time arrangement. The order's only change in father's school-year parenting time was the omission of father's once-a-week evening parenting time upon the agreement of the parties. The order did not modify any of father's overnight, school-year parenting time. Rather, the order provided for the same overnight school-year parenting-time arrangement as the prior order—one overnight per week on Wednesdays and two weekends per month.

Finally, the record indicates that the district court was primarily considering the question of increasing father's school-year parenting time and did not intend to eliminate father's summer and holiday parenting time with its order. Father's motion requested equal parenting time. And the existing parenting order already provided equal parenting time in the summer (father was granted six weeks out of twelve). Thus, because the previous order only granted father overnight parenting time every other weekend and one night a week

13

during the school year, additional overnight weekly school-year parenting time was the most logical place to increase father's parenting time. Additionally, father's summer parenting time was briefly mentioned only once during the motion hearing while father's attorney spent a considerably greater amount of time arguing for "an equal schedule" more than "every other weekend." And, importantly, the district court's conclusions of law manifest an intent to maintain the parenting-time schedule that had been in place the previous 13 years, which included father's holiday and summer parenting time.

We therefore conclude that the district court's order is best read as merely denying father's request to increase his school-year parenting time and thus maintaining the previous parenting-time schedule, rather than eliminating father's summer and holiday parenting time. The district court therefore acted within its discretion in denying father's motion.

**Affirmed.**