# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0877

In the Matter of the Welfare of the Children of: V. R. R. and M. A. H., Parents,
Commissioner of Human Services, Legal Custodian.

**Filed January 29, 2024**
**Affirmed**
**Reyes, Judge**

Todd County District Court
File No. 77-JV-21-621

Paul B. Hunt, Karkela, Hunt & Cheshire, P.L.L.P., Perham, Minnesota (for appellant Judith Flores)

John E. Lindemann, Todd County Attorney, Jane M. Gustafson, Assistant County Attorney, Long Prairie, Minnesota (for respondent Todd County)

Angela J. Sonsalla, Perham, Minnesota (for respondent guardian ad litem)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Florey, Judge.[*]

## SYLLABUS

When a relative or foster parent files a motion for an order for adoptive placement of a child under Minn. Stat. § 260C.607, subd. 6(a)(1) (2022), they must file either (1) a valid adoption home study[1] under Minn. Stat. § 259.41 or Minn. Stat. § 260C.611 approving the relative or foster parent for adoption of the child or (2) an affidavit attesting

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

[1] Minn. Stat. § 260C.607, subd. 6 (2022), uses the phrase "adoption home study," Minn. Stat. § 259.41 (2022) uses "adoption study," and Minn. Stat. § 260C.611 (2022) uses "adoption study," "adoptive home study," and "adoption home study" interchangeably. We construe each of the phrases to refer to an "adoption home study."

to efforts to complete an adoption home study that is signed by the relative or foster parent and the responsible social-services agency or licensed child-placing agency that will complete the adoption home study.

## OPINION

**REYES**, Judge

Appellant argues that the district court (1) erred by not granting her motion for an evidentiary hearing after she filed a motion for an order for adoptive placement; (2) did not give adequate weight to placing siblings together; and (3) failed to consider Minn. Stat. § 259.41, subd. 1(b), when determining the need for an adoption home study. We affirm.

## FACTS

Appellant is the maternal grandmother of J.U.R., who was born in June 2021. Soon after J.U.R.'s birth, respondent Todd County Health and Human Services (Todd County) filed an expedited petition to terminate the parental rights (TPR) of J.U.R.'s biological parents and placed J.U.R. with grandmother. At that time, grandmother was a licensed foster-care parent; was already fostering J.U.R.'s older sibling, J.J.R.; and had legally adopted J.U.R.'s older half-sibling, J.J.H.F. The district court ordered that custody of J.U.R. be transferred to Todd County and granted the TPR petition. At that time, respondent guardian ad litem for J.U.R. (the GAL)[2] agreed that placement of J.U.R. with grandmother was in J.U.R.'s best interests, and Todd County approved of grandmother's home as J.U.R.'s permanent placement.

---

[2] The GAL did not file a brief in this appeal.

In December 2021, Todd County learned from Wadena County that there had been a domestic incident between grandmother and her husband that resulted in her husband's arrest, during which grandmother appeared to be intoxicated and admitted to consuming alcohol. Grandmother also called the police a day after the incident, was panicked and unfocused, and admitted to consuming alcohol again. J.U.R. was in grandmother's care during these events. Based on these reports, Todd County and Wadena County social workers visited grandmother's home to remove J.U.R. and J.J.R.[3] Upon arriving, the social workers found grandmother in bed at 1:15 p.m. The Todd County social worker reported that it took grandmother "approximately 15 minutes to get out of bed" to speak with the social workers. Grandmother admitted to consuming alcohol, and the Todd County social worker described her as "shaky, unable to walk straight and unable to focus directly." The social workers found J.U.R. asleep "in the back family room in [a] bouncy chair with the television turned up very loudly." J.U.R.'s pajamas and the bouncy chair were soaked with urine, and grandmother could not confirm how long J.U.R. had been there. The Todd County social worker could not find any clean clothes and only found three pieces of clothing that fit J.U.R. After the social workers removed J.U.R. and J.J.R. from the home, grandmother's stepson reported to officers that grandmother was suicidal. Law enforcement subsequently confiscated a loaded handgun from grandmother's vehicle.

---

[3] J.J.R. is the subject of an ongoing child in need of protection and services (CHIPS) permanency proceeding in Wadena County. The December 2021 events were also the basis for Wadena County opening a CHIPS case for J.J.H.F. and temporarily removing J.J.H.F. from grandmother's home.

3

Todd County placed J.U.R. with a different foster-care provider[4] and informed the district court that it had begun to seek new placement options and would be conducting a relative search. The district court approved Todd County's removal of J.U.R. and change in foster-care placement. In February 2022, the GAL reported to the district court that "[neither J.U.R. nor J.J.R.] will be returning to [grandmother's care] due to the risk of endangerment."

In April 2022, Todd County filed a 90-day relative search court report with the district court without listing grandmother. Grandmother subsequently filed a notice of intervention in J.U.R.'s juvenile-protection case and, when no parties objected, she automatically became a party in May 2022. Minn. R. Juv. Prot. P. 34.03, subd. 1. Grandmother then moved the district court to stay any adoptive-placement proceedings for J.U.R. In an accompanying affidavit, grandmother stated that she had learned that adoptive placement for J.U.R. had been determined and requested an opportunity to be heard and considered as an adoptive placement so that J.U.R., J.J.R., and J.J.H.F. could remain together.

The district court heard grandmother's motion in June and denied it in July 2022.[5] The district court found that Todd County had considered grandmother as a permanency

---

[4] Although initially placed in separate foster homes, J.U.R. was ultimately transferred to the same foster home as J.J.R., and they have since remained together.

[5] Meanwhile, grandmother had also moved for expedited relief and temporary relief in J.J.R.'s Wadena County case. The motion hearing was held in June 2022. In its August 2022 order, the Wadena County District Court determined that grandmother had alleged a prima facie showing to warrant an evidentiary hearing under Minn. Stat. § 260C.607, subd. 6 (2022), the same statute at issue here.

4

option and had exercised due diligence in its relative search, and further determined that it was not in J.U.R.'s best interests to grant grandmother's motion to delay permanency proceedings or to place J.U.R. with J.J.H.F. in grandmother's care.

In September 2022, the commissioner of the Minnesota Department of Human Services (the commissioner) revoked grandmother's foster-care license based on an investigation of the December 2021 events.[6] On April 12, 2023, grandmother notified the district court that, despite being a party to the proceeding, she had just received notice of an adoption-placement agreement between Todd County and J.U.R.'s foster parents and that an adoption hearing for J.U.R. had been set for mid-April. Later that day, grandmother filed a motion to stay J.U.R.'s adoption proceedings and to allow her an opportunity to bring a motion for an order for adoptive placement. Also that day, Todd County notified the district court of the adoption-placement agreement, which had been executed mid-March 2023. Approximately a week later, grandmother filed a motion for an order for adoptive placement of J.U.R. with an affidavit and supporting documents under Minn. Stat. § 260C.607, subd. 6.

Later in April, the district court heard grandmother's motion, and both parties submitted briefs. Todd County argued that grandmother's motion failed to comply with

---

[6] Todd County has included the commissioner's license-revocation decision in its addendum and appears to have provided it to the district court by letter in September 2022. However, the record contains only Todd County's letter to the district court referencing the revocation decision, but not the revocation decision itself. The letter is not part of the record on appeal. Minn. R. Civ. App. P. 110.01. Therefore, we do not consider it in resolving this appeal. *See In re Welfare of J.P.-S.*, 880 N.W.2d 868, 874 (Minn. App. 2016) ("We may not base our decision on matters that were not received into evidence by the district court and that are outside the record on appeal.").

statutory requirements because she did not have a valid adoption home study. Todd County further argued that it was unable, and not required, to complete a home study for grandmother and that grandmother's motion was barred by collateral estoppel based on the district court's prior July 2022 order. The GAL also opposed grandmother's motion, opining that J.U.R.'s best interests favored adoption by J.U.R.'s current foster parents. Grandmother countered that she had alleged a prima facie showing of Todd County's unreasonableness based on its refusal to consider her as an adoptive placement for J.U.R., that she met her burden for an evidentiary hearing because Todd County refused to complete an adoption home study for her, and that collateral estoppel did not bar grandmother from bringing her motion. After submitting her brief, grandmother filed a home-study-assessment update, which had been completed May 3, 2021, nearly two years before her motion, that she claimed was valid.

In June 2023, the district court, without holding an evidentiary hearing, denied grandmother's motion for an order for adoptive placement after determining that grandmother's motion failed to meet the requirements under Minn. Stat. § 260C.607, subd. 6(a)(1), because she did not have a valid adoption home study and because her affidavit did not include the signature of "the responsible social services agency or licensed child-placing agency completing the adoption home study." Further, the district court determined that, even if she would have met the statutory requirements for her motion, grandmother still failed to "make a *prima facie* showing that [Todd County] was unreasonable in failing to make the requested adoptive placement." The district court did not address Todd County's collateral-estoppel argument.

6

This appeal follows.[7]

**ISSUE**

Did the district court err by denying grandmother an evidentiary hearing on her motion for an order for adoptive placement under Minn. Stat. § 260C.607, subd. 6(a)(1)?

**ANALYSIS**

Grandmother argues that she complied with the requirements of Minn. Stat. § 260C.607, subd. 6(a)(1), when she filed a motion for an order for adoptive placement. Because whether grandmother's motion for adoptive placement met the requirements of Minn. Stat. § 260C.607, subd. 6(a)(1), is dispositive of this appeal, we limit our analysis to that issue.

Our analysis begins with statutory interpretation, a question of law that we review de novo. *In re Welfare of Child. of A.M.F.*, 934 N.W.2d 119, 122 (Minn. App. 2019). "The aim of statutory analysis is to effectuate the intent of the legislature," *In re Welfare of Child of S.B.G.*, 991 N.W.2d 874, 884 (Minn. 2023) (quotation omitted); Minn. Stat. § 645.16 (2022), and we presume that the legislature intends an entire statute to be effective and does not intend the production of an unreasonable or absurd result, *Lewis-Miller v. Ross*, 710 N.W.2d 565, 569 (Minn. 2006); Minn. Stat. § 645.17 (2022). We "read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *A.M.F.*, 934 N.W.2d at 122 (quotation omitted). We

---

[7] The district court denied grandmother's motion to stay the adoption proceedings of J.U.R. pending this appeal but noted that the adoption will not be finalized pending this appeal under Minn. Stat. § 260C.607, subd. 1(c) (2022).

must first determine whether a statute is ambiguous by asking whether the statute is susceptible to more than one reasonable interpretation. *Id.* If a statute is not ambiguous, its plain language controls. *Id.*

Grandmother filed her motion for an order for adoptive placement under Minn. Stat. § 260C.607, subd. 6. Subdivision 6(a) provides that, no later than 30 days after receiving notice that a child has been placed for adoption under Minn. Stat. § 260C.613, subd. 1(c) (2022),[8] "a relative or the child's foster parent may file a motion for an order for adoptive placement of a child . . . if the relative or the child's foster parent . . . has an adoption home study under section 259.41 or 260C.611 approving the relative or foster parent for adoption." Minn. Stat. § 260C.607. "If the relative or foster parent does not have an adoption home study, an affidavit attesting to efforts to complete an adoption home study may be filed with the motion instead." *Id.*, subd. 6(a)(1). "The affidavit must be signed by the relative or foster parent and the responsible social services agency or licensed child-placing agency completing the adoption home study." *Id.*

Grandmother does not argue that the statute is ambiguous but rather argues that she met its requirements because she: (1) filed an affidavit attesting to her attempts to obtain a home study with her motion; (2) had a valid home study in effect when she filed her motion; and (3) only had to have a background study under Minn. Stat. § 259.41, subds. 2 and 3,

---

[8] A child is considered "placed for adoption" when "the adopting parent, the agency, and the commissioner have fully executed an adoption[-]placement agreement." Minn. Stat. § 260C.613, subd. 1(a) (2022).

because she is the biological grandmother of J.U.R. We consider each of grandmother's arguments in turn.

**Grandmother's Affidavit**

Grandmother filed an affidavit with her signature. However, the affidavit lacks the required signature from "the responsible social services agency or licensed child-placing agency completing the adoption home study." Minn. Stat. § 260C.607, subd. 6(a)(1). Grandmother's affidavit therefore does not comply with the signing requirements under Minn. Stat. § 260C.607, subd. 6(a)(1).

In addition, grandmother asserts in her affidavit that Todd County has "refused to complete a Home Study on [her] behalf" and other service providers are unable to assist her. But neither section 259.41 nor section 260C.611 requires an agency to complete a home study on grandmother's behalf. Further, we have previously rejected similar arguments regarding section 260C.607, subdivision 6(a)(1)'s requirements. In *A.M.F.*, the appellant requested that the district court waive the home-study requirement because of the county's actions, including its "failure in making timely referrals to the home studies" on her behalf. 934 N.W.2d at 122. We concluded that, because the appellant "did not have a home study approving her for adoption" when she filed her motion for adoptive placement, the district court properly denied appellant's motion. *Id.* at 124. Although in *A.M.F.* we interpreted an earlier version of the statute, Minn. Stat. § 260C.607, subd. 6(a)(1) (2018), which did not include the affidavit in lieu of the adoption-home-study option, we conclude that *A.M.F.*'s reasoning is applicable here. Further, grandmother cites to neither

9

circumstances nor authority that would allow a district court to excuse a movant's failure to comply with the requirements of Minn. Stat. § 260C.607, subd. 6(a)(1).

**Grandmother's Home Study**

Grandmother states that, when she brought her motion for adoptive placement, she had a valid home-study assessment in effect which she filed with the district court after the motion hearing. The district court determined that grandmother did not have a "valid, completed home study," but did not expand upon its determination.

Grandmother's home-study-assessment update is not a valid "adoption home study" under either Minn. Stat. § 259.41 or Minn. Stat. § 260C.611. Section 259.41 provides that "[a]n adoption study is valid if the report has been completed or updated *within the previous 12 months*." Minn. Stat. § 259.41, subd. 4 (emphasis added). Because grandmother's assessment update was completed in May 2021, it was no longer a valid adoption home study when grandmother filed her motion for an order for adoptive placement in April 2023. Further, the assessment update grandmother submitted relates to foster-care licensing and was completed before J.U.R. was born. Minnesota Statutes section 260C.611(a) provides that "[a]n adoption study under section 259.41 approving placement of *the child* in the home of the prospective adoptive parent shall be completed before placing any child under the guardianship of the commissioner in a home for adoption." (Emphasis added.) Because the assessment update does not approve placement of J.U.R. with grandmother, it does not qualify as an adoption study under section 260C.611. Moreover, section 260C.611(a) also provides that a "child foster care home study" can qualify as an approved adoption home study only if, among other requirements,

10

"a prospective adoptive parent has a *current child foster care license . . .* and is seeking to adopt a foster child who is *placed in the prospective adoptive parent's home*," and the commissioner has not issued a "sanction on the [foster care] license under section 245A.07" within the last three years. Minn. Stat. § 260C.611(a) (emphasis added). Grandmother disputes neither that J.U.R. is placed outside of grandmother's home nor that the commissioner revoked grandmother's child-foster-care license in 2022.

Grandmother also contends that no home study was required because, under Minn. Stat. § 260C.607, subd. 6(f)(2), (g)(1), a district court has the discretion to order adoptive placement after an evidentiary hearing even without a home study being filed with the original motion for an order for adoptive placement. But neither of these provisions change the threshold requirement that, if the relative or foster parent does not file an adoption home study, then the relative or foster parent must file an affidavit signed by them and the agency completing the adoption home study. Minn. Stat. § 260C.607, subd. 6(a)(1). Because grandmother failed to comply with the affidavit requirements, her argument fails. *See A.M.F.*, 934 N.W.2d at 124.

**Background Study under Minn. Stat. § 259.41**

Grandmother argues that, under Minn. Stat. § 259.41, subd. 1(b), because she is the biological grandmother to J.U.R., she could submit a background study in lieu of an adoption home study with her motion for an order for adoptive placement.

Although grandmother faults the district court for not considering this issue, she did not raise it before the district court. Because we do not have a decision from the district court, we decline to address grandmother's argument here. *See Hoyt Inv. Co. v.*

11

*Bloomington Com. & Trade Ctr. Assocs.*, 418 N.W.2d 173, 175 (Minn. 1988) ("[A]n undecided question is not usually amenable to appellate review."); *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("[A] party [may not] obtain review by raising the same general issue litigated below but under a different theory."). Further, inadequately briefed issues are not properly before an appellate court. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982); *In re Welfare of Child of L.M.L.*, 730 N.W.2d 316, 322 (Minn. App. 2007) (applying *Melina* in a juvenile-protection matter). Besides referencing Minn. Stat. § 259.41, subd. 1(b), grandmother's argument is conclusory, and she does not cite to any other authority to support it. *See State Dep't of Lab. & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address inadequately briefed question); *In re Child of P.T.*, 657 N.W.2d 577, 586 n.1 (Minn. App. 2003) (applying *Wintz* in appeal regarding TPR), *rev. denied* (Minn. Apr. 15, 2003).

## DECISION

We hold that, under Minn. Stat. § 260C.607, subd. 6(a)(1), at the time a relative or foster parent files a motion for an order for adoptive placement of a child, they must file either (1) a valid adoption home study under Minn. Stat. § 259.41 or Minn. Stat. § 260C.611 approving the relative or foster parent for adoption of the child or (2) an affidavit attesting to efforts to complete an adoption home study that is signed by the relative or foster parent and the responsible social-services agency or licensed child-placing agency that will complete the adoption home study. Here, grandmother failed to file a valid adoption home study or an affidavit that met subdivision 6(a)(1)'s requirements. Because grandmother failed to satisfy the statutory prerequisites for an evidentiary hearing

on her request that J.U.R. be placed with her, the district court did not err by refusing to

hold the hearing and denying grandmother's motion for an order for adoptive placement.

**Affirmed.**